Robert L. **GRIFFITHS**, Appellant,

v.

**ANDY'S BODY & FRAME, INC.**, and Alaska National Insurance Company, Appellees.

No. S–12252.

Supreme Court of Alaska.

Aug. 17, 2007.

eligible for benefits because his employer's medical examiner had found no permanent partial impairment (PPI). The board's decision and order nonetheless advised Griffiths that he could seek a PPI rating of his own and then ask the board to modify its ruling if the rating established a permanent impairment. Griffiths obtained a favorable rating and petitioned for modification. But the board dismissed his petition, ruling that Griffiths had inexcusably failed to submit an affidavit establishing that, with due diligence, he could not have obtained his PPI rating in time for the board's prior hearing. The superior court affirmed the board's ruling on this point. We now reverse. Because the board told Griffiths in its earlier decision that he could get his own expert PPI rating and then ask for modification, Griffiths could reasonably expect that he had no need to file an affidavit establishing due diligence if he obtained the new rating and sought modification within the one-year period normally allowed for filing a petition for modification.

Burt Mason, Law Offices of Burt Mason, Eagle River, for Appellant.

Theresa Hennemann, Holmes Weddle & Barcott, P.C., Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Robert Griffiths worked as an auto body repairman before developing hand and wrist symptoms that made it difficult for him to work. He filed an injury report and workers' compensation claim for carpal tunnel syndrome in 2001 and had surgery on both hands. Griffiths applied and was initially found eligible for reemployment benefits, but his employer later petitioned to modify this eligibility determination. After a hearing, the board ruled that Griffiths was no longer

## II. FACTS AND PROCEEDINGS

Robert Griffiths worked most of his adult life as an auto body repairman; he was employed at Andy's Body & Frame, Inc., for approximately five years before he filed a workers' compensation claim for hand pain. He was diagnosed with carpal tunnel syndrome and on September 18, 2001, had surgery on his left hand to treat it. His physician released him to return to work on November 26, 2001, with the restriction that he not use vibratory tools. Griffiths first applied for reemployment benefits on January 7, 2002. A workers' compensation technician denied his application on January 25, 2002, because his physician had released him to work.

Griffiths moved to California during the winter of 2001–2002 because his wife was being treated there for cancer. While in California Griffiths had surgery on his right hand to relieve his carpal tunnel complaints. On April 23, 2002, Alaska National Insurance Company, Andy's Body's insurer,[1] requested

1. We refer to Andy's Body & Frame, Inc. and Alaska National Insurance Company collectively as "Andy's Body."

that Griffiths be referred for an eligibility evaluation for reemployment benefits because it had received a medical report showing that Griffiths could no longer work as an auto body repairman. The Alaska Workers' Compensation Division referred Griffiths for an eligibility evaluation on May 24, 2002. On August 22, 2002, his physician in California, Dr. Elise Smith–Hoefer, wrote that any future jobs Griffiths held should have limits on lifting, pushing, pulling, grasping, and twisting. She also stated that he could not return to his former employment and needed retraining.

On September 16, 2002, Dr. Smith–Hoefer wrote to Andy's Body that Griffiths was medically stable as of August 22, 2002, but that she could not provide a PPI rating because she was not a qualified medical evaluator. Also on September 16, 2002, a reemployment benefits administrator (RBA) with the Alaska Workers' Compensation Division notified Andy's Body and Griffiths that Griffiths was eligible for reemployment benefits. Andy's Body had thirteen days to request a hearing, but it failed to contest the determination. The RBA's decision became final, and Griffiths elected to receive reemployment benefits.

Andy's Body arranged to have Dr. Clifton Baker evaluate Griffiths for a PPI rating on November 16, 2002. Dr. Baker determined that Griffiths probably should not return to his former job as an auto body repairman, that he had reached medical stability, and that he had a one percent impairment of the right hand, which, Dr. Baker concluded, would be equivalent to a zero percent whole person impairment under the *American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition.* Andy's Body then sent a copy of Dr. Baker's report to Dr. Smith–Hoefer, who responded that she concurred with Dr. Baker's conclusion, "[p]articularly that he should not return to his previous job."

On February 20, 2003, Andy's Body filed a petition for modification of the reemployment eligibility determination based on Dr. Baker's report and Dr. Smith–Hoefer's concurrence. The Alaska Workers' Compensation Board held a hearing on May 13, 2003; Griffiths represented himself at the hearing. On June 6, 2003, the board issued a decision and order in which it found that the only PPI rating in the record—Dr. Baker's—showed that Griffiths had a zero percent whole person impairment under the AMA Guides. Based on *Rydwell v. Anchorage School District,*[2] the board ruled that Griffiths was no longer eligible for reemployment benefits even though all physicians who evaluated him concluded that he could not return to his regular work. The board nevertheless qualified this ruling by observing that Griffiths would remain free to seek a PPI rating from his own treating physician and could move to modify the board's ruling if that rating differed from Dr. Baker's:

> Nonetheless, we note that the employee has never been actually rated by his treating physicians. As the employee points out, neither of his surgical physicians performs impairment ratings. There is certainly no prohibition barring the employee to seek a referral from an attending physician to a physician who may provide a rating with a different result than that of Dr. Baker. Should the employee receive a rating indicating he does have a permanent impairment, he may seek modification under the provisions of AS 23.30.130 . . . . [3]

Almost nine months later, on March 16, 2004, Griffiths petitioned to modify the June 6, 2003, decision and order. In his petition, which he filed pro se, Griffiths stated that he sought "to toll statute of limitations as I need further treatment & I've never had a PPI [r]ating." On April 1, 2004, Griffiths filed a change-of-attending-physician form designating Dr. John Troxel as his new physician. Dr. Troxel then referred Griffiths to Dr. Larry Levine for a PPI rating on May 11, 2004.

Dr. Levine concluded that Griffiths had a fifteen percent whole person impairment

2. *Rydwell v. Anchorage Sch. Dist.,* 864 P.2d 526 (Alaska 1993).

3. AS 23.30.130(a) requires that a petition for modification be filed within one year of rejection of a claim or the date of the last payment of compensation.

based on his testing. In the meantime, on April 5, 2004, Andy's Body had moved to dismiss Griffiths's petition for modification, alleging that it was untimely. Specifically, Andy's Body contended that Griffiths should have filed the petition within a year of the September 16, 2002 RBA letter finding him eligible for benefits. Andy's Body also argued that Griffiths's petition failed to state any ground for modification.

Soon after Andy's Body moved to dismiss his petition for modification, Griffiths for the first time retained an attorney; his attorney entered an appearance on May 6, 2004. On June 2, 2004, Griffiths's attorney petitioned to amend and supplement Griffiths's March 16 petition for modification. The amended petition explained:

> There are no new medical records available to the [e]mployee, however a PPI rating was performed by Dr. Larry Levine in May, 2004, and has been or will be forwarded to the carrier. It is anticipated that this record will not be filed until after the year after the above referenced D & O, but it is the foundation of this Petition. As the [d]octor did find a ratable PPI, the issue of eligibility for retraining should be revisited by the Board after the parties have accumulated the evidence necessary to put on a[h]earing.

By the time Griffiths filed his petition, Dr. Levine had written a report summarizing his findings, but no one had received it yet. Although Griffiths's petition relied on the findings of Dr. Levine, Griffiths was unable to attach a copy of Dr. Levine's report because it was not yet available to him.

Andy's Body answered Griffiths's amended petition by reasserting that the petition was not timely because it should have been filed before September 16, 2003, a year after the RBA determined that Griffiths was eligible to receive benefits. Andy's Body's answer did not raise any other procedural objections to the amended petition. The parties then stipulated to continue the hearing on Griffiths's petition, which had originally been scheduled for July 8, 2004. Andy's Body subsequently filed a controversion notice in which the only issues it raised were its continued reliance on Dr. Baker's PPI rating

and its not having received a copy of Dr. Levine's report by that time. On August 24, 2004, Griffiths filed a medical summary form with information about Dr. Levine's report. Andy's Body requested cross-examination of Dr. Levine and eventually held a deposition to preserve his testimony.

The workers' compensation board held a hearing on Griffiths's petition to modify on April 5, 2005. Dr. Levine testified via his deposition. No other witnesses testified, so the hearing consisted only of argument. Andy's Body did not argue that Griffiths's petition was filed too late; instead, it argued for the first time that Griffiths should have obtained his expert PPI rating before the hearing in May 2003, when Andy's Body presented Dr. Baker's report that Griffiths had a zero percent whole person impairment.

The board issued its decision and order on Griffiths's petition for modification on April 28, 2005. The decision dismissed Griffiths's petition as untimely, ruling that it should have been filed by September 16, 2003—that is, within one year of the RBA's September 16, 2002, finding that Griffiths was eligible for reemployment benefits. In effect, this would have required Griffiths to file the petition a little more than three months after the board granted Andy's Body's petition to modify the RBA's determination. The board alternatively decided that even if the petition itself was timely, it was fatally flawed because Griffiths failed to submit an affidavit in accordance with 8 Alaska Administrative Code (AAC) 45.150(d) explaining why due diligence would not have enabled Griffiths to obtain Dr. Levine's PPI rating for the May 2003 hearing, at which the board revoked Griffiths's reemployment benefits in light of Dr. Baker's zero PPI rating.

Griffiths appealed to the superior court, which reversed the board's ruling on the timeliness issue but affirmed on the board's alternate ground for dismissal: that the petition failed to include an affidavit of due diligence explaining Griffiths's failure to obtain Dr. Levine's PPI rating in time for the May 2003 hearing.

Griffiths appeals.

## III. DISCUSSION

### A. Standard of Review

 On appeal from the decision of a superior court acting as an intermediate court of appeal in an administrative matter, we directly review the agency's ruling.[4] "The scope of review for an agency's application of its own regulations to the facts is limited to whether the agency's decision was arbitrary, unreasonable, or an abuse of discretion." [5]

### B. Denial of the Petition for Modification

 Alaska Statute 23.30.130(a) allows the workers' compensation board to modify a previous decision based on changed conditions or a mistake of a fact. The board may modify the prior decision on its own initiative or upon application by an interested party so long as the board's review process begins within one year of the last payment of compensation or the rejection of the claim.[6]

The procedures for initiating a modification proceeding are set out by regulation; in relevant part, 8 AAC 45.150 provides:

(d) A petition for a rehearing or modification based on an alleged mistake of fact by the board must set out specifically and in detail

(1) the facts upon which the original award was based;

(2) the facts alleged to be erroneous, the evidence in support of the allegations of mistake, and, if a party has newly discovered evidence, an affidavit from the party or the party's representative stating the reason why, with due diligence, the newly discovered evidence supporting the allegation could not have been discovered and produced at the time of the hearing; and

(3) the effect that a finding of the alleged mistake would have upon the existing board order or award.[7]

Here, the board determined that Griffiths's petition violated the requirements of 8 AAC 45.150(d)(2) by failing to set out in specific detail why, with due diligence, Dr. Levine's PPI rating could not have been discovered and produced for the May 2003 hearing at which Andy's Body produced Dr. Baker's PPI rating that showed Griffiths to be ineligible for reemployment benefits.

Griffiths contends that the board abused its discretion by denying his petition for failing to include a statement of due diligence as required under 8 AAC 45.150(d).[8] He points out that the board's June 2003 decision and order expressly provided that, "[s]hould the employee receive a rating indicating he does have a permanent impairment, he may seek modification under AS 23.30.130." As Griffiths understands this statement, it authorized him to seek modification if he obtained a favorable PPI rating and initiated a modification proceeding within one year of the June 2003 decision and order, in accordance with AS 23.30.130. Because his petition complied with the 2003 decision and order's instructions, Griffiths insists that he acted with due diligence and had no need to provide any further explanation.

Griffiths further contends that Dr. Levine's testimony established that Griffiths was not medically stable before seeing Dr. Levine, so he could not have produced a PPI rating sooner. Griffiths also points out that in 2003 the board granted Andy's Body's petition and modified the RBA's original determination granting benefits yet did not require Andy's Body to include a due diligence statement in its petition or to produce evidence explaining its failure to produce Dr. Baker's zero PPI rating sooner. Given these circumstances, Griffiths insists that the board's reliance on 8 AAC 45.150(d) to dis-

---

4. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

5. *Hodges v. Alaska Constructors, Inc.*, 957 P.2d 957, 960 (Alaska 1998) (citing *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982)).

6. AS 23.30.130(a).

7. 8 AAC 45.150(d) (2004).

8. Andy's Body has not challenged the superior court's ruling on the timeliness issue; accordingly there is no need for us to address that point. *Ray v. Ray*, 115 P.3d 573, 578 (Alaska 2005).

qualify his petition was "clearly an abuse of discretion."

We agree with Griffiths that the board abused its discretion in dismissing his petition for failing to comply with 8 AAC 45.150(d). When the board issued its 2003 decision, Griffiths was representing himself. The board's decision and order advised him that nothing prevented him from obtaining a referral to a physician for a new PPI rating; the decision and order then unequivocally declared that "[s]hould the employee receive a rating indicating he does have a permanent impairment, he may seek modification under the provisions of AS 23.30.130." We think that a reasonable worker in Griffiths's position would understand the 2003 decision and order as allowing Griffiths to submit a petition for modification within one year based on a new PPI rating, without the need to explain why greater diligence might not have produced an earlier rating. The reasonableness of this interpretation seems especially clear in light of the board's apparent failure to enforce the due diligence requirement in 2003 when it granted Andy's Body's petition for modification based on Dr. Baker's unfavorable rating.

Given the provisions of the 2003 decision and order, we conclude that the board abused its discretion and violated Griffiths's reasonable procedural expectations by invoking 8 AAC 45.150(d) as a basis for its decision and order denying his petition for modification. We must therefore vacate the board's decision and remand with directions to decide, based on the evidence in the record upon conclusion of Griffiths's hearing, whether Griffiths had a ratable permanent impairment entitling him to reemployment benefits.[9]

## IV. CONCLUSION

For these reasons, we VACATE the board's decision and REMAND for a deci-

sion addressing the merits of Griffiths's petition, as directed in this opinion.

CARPENETI, Justice, not participating.

---

9. Griffiths separately argues on appeal that the board erred in its 2003 decision by relying on Dr. Baker's PPI rating because Dr. Baker incorrectly applied the *AMA Guides* in calculating the rating. The board's 2004 decision does not address this issue, and our decision remanding the case to the board makes it unnecessary to decide the issue here. On remand, however, the board may allow further argument on the point if it believes that the additional argument would be helpful.