*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANA F. SOSA DE ROSARIO, | ) | |
| | ) | Supreme Court No. S-14661 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 11-003 |
| | ) | |
| CHENEGA LODGING, d/b/a HOTEL | ) | O P I N I O N |
| CLARION, and NOVAPRO RISK | ) | |
| SOLUTIONS, | ) | No. 6763 – March 22, 2013 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Commission Chair.

Appearances: Ana F. Sosa de Rosario, pro se, Anchorage, Appellant. Colby J. Smith and Aaron M. Sandone, Griffin & Smith, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Carpeneti, Winfree, Stowers, and Maassen, Justices.

WINFREE, Justice.

## I. INTRODUCTION

A hotel worker fell and injured her back while cleaning a room. Her employer initially paid benefits, but it filed a controversion of benefits after its doctor doubted the accident's occurrence and said any work injury was not the substantial cause of the worker's continuing need for medical care. The Alaska Workers' Compensation

Board decided that the fall was the substantial cause of the worker's disability, finding the worker's testimony about the injury credible and the employer's doctor's testimony not credible. Based on the testimony of the worker and her treating physician, as well as an MRI showing a herniated disc, the Board decided that the injury was compensable. The Alaska Workers' Compensation Appeals Commission reversed the Board's decision because, in the Commission's view, substantial evidence did not support the decision. Because the Commission incorrectly decided the substantial evidence question, we reverse the Commission's decision.

## II.    FACTS AND PROCEEDINGS

Ana Sosa de Rosario is a native of the Dominican Republic who came to Alaska in 1999. Beginning in February 2000, Sosa de Rosario worked as a housekeeper for Chenega Lodging. On June 28, 2007, she fell while making a bed and subsequently had low back pain. Sosa de Rosario told her supervisor she was in pain, and the supervisor advised her to take over-the-counter medication; when that did not control the pain, Sosa de Rosario went to the emergency room.

The emergency room record indicates Sosa de Rosario complained of "r[ight] hip pain, no injury" and was "in pain." She received a morphine injection and a prescription for pain medication; her diagnosis was low back pain and possible sciatica. The emergency room doctor noted that Sosa de Rosario could return to work on July 2 if she was "feeling better."

Sosa de Rosario received treatment at Providence Family Practice Center several times that summer. On July 6 she consulted with Dr. John Schwartz, who had treated her in the past, and Dr. Bret Thompson, a resident, for leg pain; they excused her from work for a week. When Sosa de Rosario returned to the clinic on July 12 Dr. Thompson said she could resume modified work on July 23 but restricted her to lifting 15 pounds. On August 8 Sosa de Rosario again saw Dr. Thompson; he authorized

her return to modified work that day, with restrictions that she not lift more than 15 pounds and that she not bend or twist more than six times an hour. Sosa de Rosario then began working in the hotel's laundry. Chenega Lodging paid Sosa de Rosario three weeks of temporary total disability (TTD); the compensation report filed on July 31 said Sosa de Rosario had been released to regular work.

On August 21, Sosa de Rosario underwent an MRI showing she had a herniated disc at L5-S1, and a physician at Providence Family Practice Center referred her to an orthopedic surgeon. Sosa de Rosario asked to be referred to physical therapy first. She attended physical therapy for about two months, noting some improvement but telling her doctor that she still had pain. On November 11, Dr. Schwartz released Sosa de Rosario for sedentary work, with restrictions on walking, sitting, and standing. According to Dr. Schwartz's chart notes from November 28, Sosa de Rosario was "afraid that if she return[ed] to full duty her symptoms [would] regress back to the more severe state of a few months ago."

Dr. Schwartz next referred Sosa de Rosario to Dr. James Eule for treatment. Sosa de Rosario saw Jane Sonnenburg, a physician's assistant in Dr. Eule's office. Based on Sonnenburg's examination and the MRI, Dr. Eule scheduled Sosa de Rosario for an epidural injection on December 18. According to Sonnenburg, Sosa de Rosario "had some improvement with the epidural." Sonnenburg increased Sosa de Rosario's lifting limit to 20-25 pounds frequently, said that Sosa de Rosario had "met her maximal medical benefit," and noted that she would have "some element of chronicity."

Chenega Lodging arranged for an employer's independent medical evaluation (EIME) in December 2007 with Dr. Charles Brooks, an orthopedist. Dr. Brooks was skeptical of Sosa de Rosario's account of the injury and concluded that her disc problems were due to age-related degenerative changes. Dr. Brooks focused on inconsistencies between medical records and Sosa de Rosario's account of the accident,

noting: "Given the inconsistency between her recent histories and that reported in the emergency room (ER) at Providence on June 28, 2007, I would not conclude, on a more-probable-than-not basis or reasonable degree of medical probability, there was an occupational back injury on that date." Dr. Brooks's opinion with respect to causation was that Sosa de Rosario's "low back pain and right sciatica . . . may have been precipitated or worsened by her occupational duties, avocational activities, or an unreported injury," but because he did not "believe there was an occupational back injury on June 28, 2007," he could not "conclude the claimant's work was the substantial cause of her current low back pain and right sciatica."

In late December, Chenega Lodging sent Dr. Eule and Sonnenburg a copy of the EIME, asking if they agreed with it. Dr. Eule did not agree with the report, although he could "not make an accurate determination as to work injury" because he had not yet seen Sosa de Rosario. Sonnenburg concurred with the report. Sonnenburg's chart notes indicated she "tend[ed] to agree with the medical examiner's report" and that Sosa de Rosario "tend[ed] to have some inconsistency to her complaints." On January 9, 2008, Sosa de Rosario saw Dr. Schwartz again; he "recommended that she continue with light duty work indefinitely."

Chenega Lodging controverted all benefits on January 31, based on Dr. Brooks's report and on Sonnenburg's having released Sosa de Rosario to full-time work with a 20-25 pound lifting limit. Chenega Lodging terminated Sosa de Rosario's employment on March 7. On April 22 Dr. Schwartz saw Sosa de Rosario and wrote Chenega Lodging a letter stating Sosa de Rosario was "not able to work at this time and . . . would best be served by surgery." Dr. Schwartz related the onset of her "severe pain" to a June 28, 2007 "fall she suffered at work."

In July 2008 an attorney entered an appearance and filed a workers' compensation claim on Sosa de Rosario's behalf seeking: TTD from April 22, 2008, and

continuing; temporary partial disability (TPD) from the injury date to April 21, 2008; permanent total disability (PTD) from April 22, 2008, and continuing; medical costs; interest; and attorney's fees and costs. Chenega Lodging denied all claims.

The parties stipulated to a second independent medical evaluation (SIME) by an orthopedist. The Board arranged an SIME with Dr. John Lipon, who evaluated Sosa de Rosario on July 18, 2009. Also present at the evaluation were a translator and Sosa de Rosario's daughter-in-law, Suhail Echavarria. Dr. Lipon examined Sosa de Rosario and reviewed her medical records. He diagnosed degenerative disc disease, facet hypertrophy at L5-S1, and disc bulges at two other levels in her lumbar region, all caused by "a combination of genetics, aging, and progressive degenerative changes." He also diagnosed "[r]ight posterolateral disc extrusion at L5-S1, probably due to degenerative disc disease and possibly to occupational and/or non-work-related activities, which could include a prior lower back injury which has not been reported." He noted "inconsistencies in Ms. Sosa De Rosario's history of the cause and onset of her lower back and right leg pain"; he could not "state on a more probable than not basis that this condition [was] related to the industrial claim date of June 28, 2007, or her occupational duties as a housekeeper."

Dr. Lipon thought Sosa de Rosario was magnifying her symptoms and stated that there was "no consistent measurable abnormal objective evidence of radiculopathy" in his examination. In Dr. Lipon's opinion there was no injury on June 28, 2007, and because he determined there was no injury he did not give an opinion about medical stability, permanent impairment, or other issues.

At his deposition, Dr. Lipon generally testified consistently with his report. He agreed that Sosa de Rosario had a herniated disc at L5-S1 with an impingement of the nerve root, but he did not think her condition was "related to her industrial claim of [June 28, 2007]." He testified that degenerative disc disease can cause a disc extrusion

and that Sosa de Rosario's herniated disc was "most probably" caused by degenerative disc disease, but he acknowledged that she could have "had some type of injury that was never documented." He agreed with Dr. Brooks's report and "refer[red] the accident reconstruction part" to Dr. Brooks.[1] Dr. Lipon noted "magnification of pain behavior" in his examination of Sosa de Rosario and inconsistencies between his examination results and other doctors' examinations, but because he thought she might be afraid of getting hurt he could not say that she was purposely affecting the results. Dr. Lipon thought these inconsistencies were more important for determining whether Sosa de Rosario had "a significant nerve root problem that requires any treatment." Near the end of the deposition, Chenega Lodging provided its job description for the housekeeping position Sosa de Rosario had held; Dr. Lipon thought Sosa de Rosario could perform sedentary work and could return to the housekeeping position.[2] The job description Dr. Lipon was provided stated that "[t]he employee must occasionally lift and/or move

---

[1] According to Dr. Lipon, Dr. Brooks "had training in accident reconstruction." Dr. Lipon acknowledged that there was nothing in the record to indicate this was the case, but he said he had "personal information" about it because he had known Dr. Brooks for 25 years and saw him at professional meetings.

[2] Chenega Lodging did not ask Dr. Lipon to define or describe sedentary work, nor did it provide a definition. Social Security disability regulations provide, "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a) (2012). This definition is similar to the one Dr. Schwartz used to evaluate Sosa de Rosario.

up to 25 pounds."[3] Dr. Lipon also thought Sosa de Rosario could work at a dry cleaners, although he was not given a job description for that position.

The Board held a hearing on June 9, 2010, with Sosa de Rosario representing herself.[4] Chenega Lodging brought an interpreter; Sosa de Rosario brought her son's girlfriend to translate for her. The Board chair relied on translation from Chenega Lodging's interpreter. Sosa de Rosario was the only witness who testified at the hearing because translation problems arose and Sosa de Rosario asked for a continuance. The Board continued the hearing, over Chenega Lodging's objection, to give Sosa de Rosario an opportunity to find another attorney.

The hearing resumed on September 30, 2010. Sosa de Rosario and Dr. Schwartz testified. Dr. Schwartz testified that he was an internist practicing in Anchorage for 30 years, and even though he was not an orthopedic surgeon, he had "seen a lot of back pain patients and dis[c] problem patients." Dr. Schwartz testified that since the accident Sosa de Rosario had had weakness and pain in her right leg. In his opinion, Sosa de Rosario's pain was probably not caused by degenerative changes because it "came on quickly." He testified that in his experience, back pain caused by

---

[3] Occasionally lifting 25 pounds exceeded the light duty classification as defined on the form Dr. Schwartz used. Unlike Dr. Lipon, Dr. Brooks did not think Sosa de Rosario should resume work as a housekeeper. The physical requirements of Chenega Lodging's housekeeper job description differed from the description Chenega Lodging's vocational expert provided, which appears to be based on the United States Department of Labor's job descriptions. *See* U.S. Dept. of Labor, *Dictionary of Occupational Titles* (4th ed. Rev. 1991), *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM. The description the vocational expert provided classified housekeeper as "heavy," requiring lifting of up to 100 pounds, while Chenega Lodging's job description required moving or lifting only 25 pounds occasionally.

[4] Sosa de Rosario's attorney withdrew in June 2010, with her consent.

degenerative changes had a "totally different presentation."  He further testified that he referred Sosa de Rosario to an orthopedic specialist for treatment, not for diagnosis.  He thought Sosa de Rosario's diagnosis was "pretty clear, she had an acute dis[c] herniation that was symptomatic."

The Board decided Sosa de Rosario had suffered a compensable back injury on June 28, 2007, and she was entitled to further medical care.  In making its decision, the Board found that Sosa de Rosario testified credibly about the work-related injury.  The Board applied its three-step presumption analysis to the claim.[5]  The Board decided the presumption of compensability had attached through Sosa de Rosario's and Dr. Schwartz's testimony; it further found that Chenega Lodging had rebutted the presumption with Dr. Brooks's and Dr. Lipon's testimony.  In concluding that Sosa de Rosario had proved her case by a preponderance of the evidence, the Board relied on the following facts:  (1) the absence of treatment for low back pain before June 2007; (2) a credible or convincing mechanism of injury; (3) Dr. Schwartz's testimony; and (4) the MRI showing a herniated disc.  The Board expressly found Dr. Brooks not credible and

_____

[5]         As developed before the 2005 amendments to the Alaska Workers' Compensation Act, the three-step presumption analysis first required an injured worker to produce some evidence that the injury and disability were work related.  If the worker did so, the employer was then required to produce substantial evidence that either (1) provided an alternative explanation which would exclude work-related factors as a substantial cause of the disability, or (2) directly eliminated any reasonable possibility that employment was a factor in causing the disability.  If the employer met this requirement, the burden shifted back to the employee to prove all elements of the employee's claim by a preponderance of the evidence.  *Bradbury v. Chugach Elec. Ass'n*, 71 P.3d 901, 905-06 (Alaska 2003).  The Commission mentioned the 2005 amendments in its discussion of the presumption analysis in this case.  "Whether or how the 2005 amendments to the Act modified the existing three-step presumption analysis is an open question."  *Runstrom v. Alaska Native Med. Ctr.*, 280 P.3d 567, 574 n.16 (Alaska 2012).

expressly discounted Dr. Lipon's opinions because of his deference to Dr. Brooks; it considered Dr. Schwartz more credible, in part because he spoke Spanish and was able to communicate directly with Sosa de Rosario.  The Board also noted that neither Dr. Brooks nor Dr. Lipon could rule out the possibility that work activities had caused the herniated disc.  The Board ascribed the inconsistent medical records to language difficulties and "translators of varying degrees of competency."  The Board ordered Chenega Lodging to pay for an evaluation with a spine surgeon, preferably Spanish speaking, and deferred a permanent partial impairment (PPI) order until Sosa de Rosario had been evaluated and treated.  The Board also awarded TTD "from April 22, 2008 to the date of medical stability" and reserved jurisdiction over the PTD claim.

Chenega Lodging appealed to the Commission.  The Commission concluded the Board's findings were not supported by substantial evidence in light of the whole record.  The Commission focused on the Board's concern about communication difficulties due to Sosa de Rosario's limited English.  It decided Drs. Brooks and Lipon were more "qualified than Dr. Schwartz, an internist, to render *orthopedic* medical opinions. . . . Their reports constituted the more specific, the more probative, and the more persuasive evidence[] on the issue of whether employment was the substantial cause of Sosa de Rosario's low back condition."  The Commission did not mention the Board's finding that Dr. Brooks was not credible.  The Commission thought the Board "may have misapplied certain legal standards in the process of analyzing the evidence" because of its discussion of Dr. Brooks's report.  Ultimately, the Commission decided:

> [T]he quantum of evidence was not substantial enough to support the [B]oard's conclusion that employment was the substantial cause of Sosa de Rosario's disability and need for medical treatment.  The record as a whole, in particular[] the expert medical opinions provided by Drs. Brooks and Lipon, supports the opposite conclusion.  Based on the same evidence and analysis, we conclude that Sosa de Rosario

failed to satisfy her burden of proof by a preponderance of the evidence.

After deciding that Sosa de Rosario had not met her burden of proof and that her claim should have been denied, the Commission then decided whether the Board erred in permitting Sosa de Rosario to get a PPI rating at a later date. According to the Commission, neither Dr. Lipon nor Dr. Brooks considered Sosa de Rosario to be permanently impaired, and the Board should have denied her claim; Sosa de Rosario's remedy then would have been to seek modification of the Board order under AS 23.30.130(a). Sosa de Rosario appeals.

## III.   STANDARD OF REVIEW

In a workers' compensation appeal "we review the [C]ommission's decision and apply our independent judgment when there is a question of law that does not involve agency expertise."[6] We independently review the Commission's legal conclusion that the Board's factual findings are supported by substantial evidence in the record, which "requires us to independently review the record and the Board's factual findings."[7] Interpretation of a statute is a question of law to which we apply our independent judgment, interpreting the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.[8]

## IV.   DISCUSSION

### A.   It Was Error To Disregard The Board's Credibility Determinations.

---

**6**      *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010) (citing *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1125 (Alaska 2008)).

**7**      *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

**8**      *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003) (quoting *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

The Board's credibility determinations are a central issue in this case. The Board found Dr. Brooks's testimony not credible and discounted Dr. Lipon's testimony because it relied on Dr. Brooks's report. The Board found Sosa de Rosario's testimony about the accident credible and also found Dr. Schwartz's testimony about her condition credible. Although the Commission noted the credibility finding about Sosa de Rosario, it did not discuss the impact of the Board's other credibility findings. The Commission did not explain how an opinion the Board expressly found not credible together with an opinion the Board expressly discounted could be "the more specific, the more probative, and the more persuasive[] evidence" of causation. The Commission essentially reversed the Board's credibility findings, dismissing the Board's concern about communication difficulties and pointing to Dr. Brooks's and Dr. Lipon's training as orthopedists to give their opinions more weight.

Chenega Lodging argues the Board's finding that Dr. Brooks was not credible did not "allow the Board to simply ignore his testimony or prevent evaluation of his opinion in relation to the necessary quantum of evidence while evaluating the Board's decision." The only authority Chenega Lodging relies on to support this argument is an earlier Commission decision, *Uresco Construction Materials, Inc. v. Porteleki*.[9] But in *Uresco* the Board did not make a credibility determination — in response to the employee's argument that the Board found a doctor not credible, the Commission said the Board had not discussed the doctor's testimony or report.[10] Here the Board specifically found Dr. Brooks not credible.

---

[9]     AWCAC Dec. No. 152 (May 11, 2011), *available at* http://labor.alaska.gov /wccomm/memos-finals/D_152.pdf.

[10]     *Id.* at 14 (the Commission will "not assume that lack of credibility was relevant to the [B]oard's decision without a specific finding that the [B]oard disbelieved a witness").

The Board's responsibility as fact finder is set out in AS 23.30.122, which provides in relevant part:

> The board has the sole power to determine the credibility of a witness. A finding by the board concerning the weight to be accorded a witness's testimony, including medical testimony and reports, is conclusive even if the evidence is conflicting or susceptible to contrary conclusions.

The legislative history of this section states that the intent was "to restore to the Board the decision making power granted by the Legislature when it enacted the Alaska Workers' Compensation Act."[11] The "section clarifies and emphasizes the role of the Board in determining the credibility of witnesses and the weight to be accorded medical testimony and reports."[12] The legislature considered rewriting this section in 2005 when it created the Commission but ultimately elected not to do so.[13]

The legislature requires the Commission to defer to the Board's credibility findings. Alaska Statute 23.30.128(b) provides in part: "The [B]oard's findings regarding the credibility of testimony of a witness before the [B]oard are binding on the [C]ommission." We construe AS 23.30.128(b) to mean that the Commission must follow the Board's credibility determination. "Bind" means "[t]o impose one or more legal duties on (a person or institution) <the contract binds the parties> <courts are bound by precedent>."[14] Binding precedent is "[a] precedent that a court must follow."[15]

---

[11]    H. Finance Comm., Section by Section Analysis HB 159, 12th Leg., 2d Sess. at 2 (1982), *available at* Alaska Finance Comm. Bill File Microfiche No. 1468.

[12]    *Id.*

[13]    *Compare* § 29, Senate Bill (S.B.) 130, 24th Leg., 1st Sess. (Mar. 3, 2005), *with* ch. 10, FSSLA 2005.

[14]    BLACK'S LAW DICTIONARY 178 (8th ed. 2004). "Binding" is defined as
(continued...)

The Commission was thus required to accept the Board's credibility determinations, including its decision that Dr. Brooks was not credible.

We have given little weight to testimony the Board found not credible when evaluating whether substantial evidence supported a Board decision, because "we defer to the Board's determination of witness credibility."[16] Here, the Board found Dr. Brooks not credible and discounted Dr. Lipon's testimony; their opinions therefore were entitled to little weight in assessing the substantiality of the evidence. The Commission could not permissibly find their testimony "more probative" and "more persuasive" than expert testimony the Board found credible.[17] The Board found Dr. Schwartz credible; the Commission could not dismiss his opinion simply because he was not an orthopedist.[18]

---

[14]    (...continued)
"that binds" or "that requires obedience." *Id.*

[15]    BLACK'S LAW DICTIONARY 1215 (8th ed. 2004).

[16]    *Steffey v. Municipality of Anchorage*, 1 P.3d 685, 691-92 (Alaska 2000).

[17]    The fact that Dr. Brooks did not testify orally is not determinative. "A finding by the board concerning the weight to be accorded a witness's testimony, *including medical testimony and reports*, is conclusive even if the evidence is conflicting or susceptible to contrary conclusions." AS 23.30.122 (emphasis added). Also, "[t]he board favors the production of medical evidence in the form of written reports . . . ." 8 Alaska Administrative Code (AAC) 45.120(k) (2012).

[18]    We recently decided in a personal injury case that an injured party's treating physician could offer an experience-based opinion about causation. *Thompson v. Cooper*, 290 P.3d 393, 400 (Alaska 2012). Dr. Schwartz's opinion was similar — he testified to his experience treating patients with back problems, and he based his opinion about causation on that experience. Chenega Lodging claims that Dr. Schwartz testified he would defer to the opinions of an orthopedist. We disagree with Chenega Lodging's interpretation of the testimony it cites. Dr. Schwartz testified that he would defer to an orthopedist's opinion about the need for and type of surgery but qualified this statement by saying "someone that . . . I was familiar with." Any deference Dr. Schwartz might

(continued...)

We have never held that the opinion of one type of medical specialist is, as a matter of law, entitled to greater weight than that of another. Rather, "[w]hen medical experts provide contradictory testimony, the [B]oard determines credibility."[19] Additionally, "if the Board is faced with two or more conflicting medical opinions — each of which constitutes substantial evidence — and elects to rely upon one opinion rather than the other, we will affirm the Board's decision."[20] The Board can also choose not to believe its own expert.[21]

Chenega Lodging contends the Board's analysis of Dr. Brooks's report was inadequate and the Board did not make adequate findings about issues that were material and contested, but it does not identify those issues. The Board was concerned that Dr. Brooks was basing his opinion on what the Board considered minor inconsistencies in the medical records, even though Dr. Brooks knew Sosa de Rosario did not speak English and was dependent on others to translate for her. The Board's decision shows that it carefully examined the medical records and based its decision on its own evaluation of those records.

Finally, it is noteworthy that the Board's other credibility finding was that Sosa de Rosario was "credible and consistent in her description of the mechanism of her injury." The Commission did not consider this finding "particularly helpful" in making

---

[18]     (...continued)
give to an opinion about treatment is unrelated to causation.

[19]     *Cowen v. Wal-Mart*, 93 P.3d 420, 426 (Alaska 2004) (citing *Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1189 (Alaska 1993)).

[20]     *Id.* (quoting *Doyon Universal Servs. v. Allen*, 999 P.2d 764, 767-68 (Alaska 2000)) (alteration omitted) (internal quotation marks omitted).

[21]     *See, e.g.*, *AT & T Alascom v. Orchitt*, 161 P.3d 1232, 1238, 1240-42 (Alaska 2007) (affirming Board when it rejected testimony of its own engineering expert).

a causation determination, but both Dr. Brooks and Dr. Lipon specifically said they did not think there was an accident on June 28, 2007. This discrepancy further undermined both orthopedic doctors' opinions, weakening their evidentiary value.[22] In considering whether substantial evidence supported the Board's decision, Dr. Brooks's and Dr. Lipon's opinions were entitled to little, not great, weight.

**B.    It Was Error To Conclude That Substantial Evidence Did Not Support The Board's Decision.**

Sosa de Rosario argues that the Board correctly credited Dr. Schwartz's and her own testimony in finding that her injury was compensable.[23] Chenega Lodging argues that several of the Board's findings were not supported by substantial evidence. Assessing the Commission's decision requires review of the evidence presented to the Board in light of the Board's credibility determinations.

The Board and Commission both applied the three-step presumption analysis used in workers' compensation cases to determine the claim's compensability.[24] The Board decided that Sosa de Rosario had attached the presumption of compensability and that Chenega Lodging had rebutted it. The Commission agreed with both of these decisions. As discussed, the Board found Sosa de Rosario was credible and Dr. Brooks was not. The Board found Dr. Schwartz's testimony credible and "discounted" Dr. Lipon's opinions. The Board decided that Sosa de Rosario had proved by a preponderance of the evidence that her work-related injury was the substantial cause of her disability and need for treatment of her low back pain and sciatica. The Commission

---

[22]    *Cf. Smith v. Univ. of Alaska, Fairbanks*, 172 P.3d 782, 790-91 (Alaska 2007) (requiring Board to evaluate lay testimony that "could undermine" employer's doctor's analysis of the course of the employee's illness).

[23]    We interpret the pleading of pro se litigants liberally. *Khalsa v. Chose*, 261 P.3d 367, 372 n.9 (Alaska 2011) (citing *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)).

[24]    *See supra* note 5.

reversed the Board's analysis at the third stage — when the Board weighs the evidence — because it did not think the quantum of evidence was "substantial enough to support the [B]oard's conclusion."

The Board based its compensability determination on four factors: the MRI showing a herniated disc, a credible mechanism of injury, the absence of treatment for lumbar spine problems before the June accident, and Dr. Schwartz's credible testimony. Chenega Lodging first argues that substantial evidence does not support the finding that Sosa de Rosario had not received medical treatment for low back pain and right leg pain before the work-related injury, pointing to medical chart notes supporting its argument.[25] The Commission agreed with Chenega Lodging that there was evidence of "low back pain that pre-existed the work incident," citing medical records from 2004, 2006, and early 2007.[26]

Our review of the record does not support the Commission's summary of the evidence. The medical records show that Sosa de Rosario was treated for pain in her cervical and thoracic spine before June 2007, but the records do not show treatment for lumbar pain. The only medical record that might suggest prior lumbar pain was a pain diagram from February 2006. According to a medical summary Chenega Lodging submitted to the Board, the pain diagram was from Providence Physical Therapy. Dr. Schwartz referred Sosa de Rosario to physical therapy at that time because of cervical pain after a car accident. Chenega Lodging questioned Dr. Schwartz at the hearing about the pain diagram. The Board considered the pain diagram and described

---

[25] No one contested that Sosa deRosario's MRI showed a herniated disc impinging on her nerve.

[26] The chart note from 2007 refers to a history of back pain in 2006, but the related medical record from 2006 shows that Sosa de Rosario was treated for cervical pain at the time.

it as "incomplete and inconsistent with the complaints in the accompanying chart note." This assessment is supported by the record, as the chart notes show that Sosa de Rosario received treatment and was referred to physical therapy for cervical pain complaints.

Chenega Lodging next contends that the Board incorrectly assessed the impact the language barrier and translation had in the case. The Board could reasonably have concluded that Sosa de Rosario's limited English and her reliance on translators influenced the accuracy of some medical records.[27] The record shows translation errors at the Board's hearing as well as at Sosa de Rosario's deposition. Dr. Thompson wrote in one chart note that Sosa de Rosario should be seen by a Spanish-speaking provider, suggesting that he was concerned about the language barrier. Given the importance Dr. Brooks and, consequently, Dr. Lipon attached to Sosa de Rosario's account of the injury in determining causation, the Board acted within its discretion in assessing potential communication problems as it did. The only physician who communicated directly with Sosa de Rosario in Spanish was Dr. Schwartz, and the Board could reasonably conclude that their ability to communicate more effectively made his opinions more accurate.

Chenega Lodging maintains substantial evidence does not support the Board's finding that Dr. Lipon deferred to Dr. Brooks "on the mechanism of injury issue." Dr. Lipon said at his deposition that he "would have to refer the accident reconstruction part" to Dr. Brooks. Dr. Lipon also agreed that he would "defer to [Dr. Brooks] whenever the reference was made to the reconstruction of events." These comments fully support the Board's finding.

---

[27]    To the extent the medical records conflict, it is the Board's responsibility as the finder of fact to resolve evidentiary conflicts, as it did here. *See Robinson v. Municipality of Anchorage*, 69 P.3d 489, 493 (Alaska 2003) (holding that one of Board's functions is weighing conflicting evidence).

Chenega Lodging argues that the Board should have given Dr. Brooks's report and Dr. Lipon's testimony and report more weight. As we explained above, the Board has authority to determine witness credibility and to weigh conflicting evidence. Because of the Board's credibility determinations, the opinions of Dr. Brooks and Dr. Lipon are entitled to little weight in assessing the evidence supporting the Board's findings, and Dr. Schwartz's opinion is entitled to greater weight.

The Commission thought Dr. Schwartz's opinions "[fell] short of the statutory standard that employment must be the substantial cause" of the injury and disability. According to the Commission, "to say that the injury was *work-related*, or was *in large part* responsible for her disability, does not *necessarily* mean that employment was *the substantial cause.*" (Emphasis in original.) We have cautioned against considering the workers' compensation process "a game of 'say the magic word,' in which the rights of injured workers should depend on whether a witness happens to choose a form of words prescribed by a court or legislature."[28] We have not required a physician's statement to include a specific term to prove an injured worker's claim,[29] and we have "upheld compensation awards in the face of inconclusive medical testimony."[30]

We hold that Dr. Schwartz's opinion together with other evidence provides adequate support for the Board's decision. Dr. Schwartz rejected the opinion that Sosa de Rosario's lumbar complaints and sciatica were caused by degenerative changes

---

[28] *Smith v. Univ. of Alaska, Fairbanks*, 172 P.3d 782, 791 (Alaska 2007) (quoting 8 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 130.06[2][e] (2006)) (internal quotation marks omitted).

[29] *See id.* ("A statement by a physician using a probability formula is not required to establish employer liability in workers' compensation.").

[30] *Id.* (citing *Emp'rs Commercial Union Co. v. Libor*, 536 P.2d 129, 132 (Alaska 1975); *Beauchamp v. Emp'rs Liab. Assurance Corp.*, 477 P.2d 993, 996-97 (Alaska 1970)).

because, in his experience, degenerative changes had a different presentation; he linked her pain to the work-related accident. From the absence of credible medical testimony to the contrary, as well as from the MRI and Sosa de Rosario's account of the injury, the Board could reasonably conclude that the work injury was the substantial cause of her continuing need for medical care.

Chenega Lodging finally argues that the Board applied an incorrect legal standard and did not require Sosa de Rosario to prove her claim by a preponderance of the evidence. It relies on the Board's use of the phrase "substantial evidence" to describe some of the evidence. But the Board first made a series of factual findings "by a preponderance of the evidence." The Board made detailed factual findings and credibility determinations showing what evidence it considered important in reaching its decision. And it expressly set out the preponderance-of-the-evidence standard to describe the last step of the presumption analysis, stating that Sosa de Rosario "ha[d] proven by a preponderance of the evidence her work was the substantial cause in her need for past and continuing medical treatment and disability." We conclude the Board applied the correct legal standard.[31]

Our examination of the record and the Board's findings leads us to conclude that the Commission erred in reversing the Board's decision that Sosa de Rosario's injury was work related and compensable — we hold that substantial evidence in the record supports the Board's decision.[32]

---

[31] We disagree with Chenega Lodging's contention that the Board required it to "prov[e] the non-compensability of the employee's claim." The Board's comment that Dr. Brooks did not exclude occupational activities as a possible cause of Sosa de Rosario's disc problem was part of its explanation for why it found the needed medical treatment to be work related. The Board pointed to other evidence as well.

[32] With respect to the TTD finding, Chenega Lodging asserts that no medical
(continued...)

**C.     It Was Error To Reverse The Board's PPI Decision.**

The Board decided that Sosa de Rosario was "entitled to PPI [permanent partial impairment] when rated."  The Commission faulted the Board for this order because in its view, only Chenega Lodging presented evidence about whether Sosa de Rosario had a permanent impairment.  Citing *Griffiths v. Andy's Body & Frame, Inc.*,[33] the Commission said that "[t]he appropriate remedy" would have been for Sosa de Rosario to ask for a modification.

Before the Board the parties disagreed about medical stability; the Board decided Sosa de Rosario was not yet medically stable and directed her to get a rating when she reached medical stability.  As a result Sosa de Rosario's PPI claim was not yet ripe.  In *Griffiths*, in contrast, everyone agreed the claimant was medically stable — he was already engaged in the reemployment process when the employer had him formally rated.[34]  Although the Board could have said that it was reserving a decision on PPI until Sosa de Rosario was rated rather than that she was entitled to PPI when rated, any error was harmless because if and when she is rated, Chenega Lodging can contest the rating.

---

[32]     (...continued)
evidence supported the Board's award of TTD.  We disagree.  Dr. Schwartz thought that Sosa de Rosario would benefit from surgery, suggesting that in his opinion she was not medically stable.  (Medical stability is "the date after which further objectively measurable improvement from the effects of the compensable injury is not reasonably expected to result from additional medical care or treatment."  AS 23.30.395(27).)  The Board found his testimony credible; it also provided in its order that if surgery were recommended and Sosa de Rosario refused to consider it, the date of medical stability would be the date of the Board's decision.

[33]     165 P.3d 619 (Alaska 2007) (holding that Board abused its discretion in failing to allow worker to file a modification petition about permanent impairment rating).

[34]     *Id.* at 621.

## V. CONCLUSION

For the foregoing reasons, we REVERSE the Commission's decision and REMAND to the Commission with instructions to reinstate the Board's order.