*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AKEEM J. HUMPHREY, | ) | |
| | ) | Supreme Court No. S-15140 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| | ) | Appeals Commission No. 11-021 |
| v. | ) | |
| | ) | O P I N I O N |
| LOWE'S HOME IMPROVEMENT | ) | |
| WAREHOUSE, INC., Employer, | ) | No. 6960 - October 16, 2014 |
| and NEW HAMPSHIRE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Commission Chair.

Appearances: James M. Hackett, James M. Hackett, Inc., Fairbanks, for Appellant. Krista M. Schwarting, Griffin & Smith, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

In this case we are asked to determine whether an employee was entitled to temporary total disability benefits after he left employment under disputed circumstances. The employee injured his back at work but returned after being cleared

for lighter duty. His employment soon ended for reasons the parties dispute, and he moved with his family to Nevada, where he later had back surgery. The Alaska Workers' Compensation Board found his injury compensable and ordered the employer to pay medical costs and disability benefits from the surgery onward; however, the Board denied temporary total disability benefits from the end of his employment to the surgery, finding the employee had voluntarily left his job for reasons that were not injury-related.

The employee appealed to the Alaska Workers' Compensation Appeals Commission, which affirmed the decision on disability but remanded to the Board for clarification of its attorney's fees award. The employee now appeals the Commission's decision of his claim for temporary total disability benefits and its denial of his request for attorney's fees for the appeal. We affirm the Commission's decision that the employee was not entitled to temporary total disability benefits, reverse its denial of attorney's fees for the appeal, and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

Akeem Humphrey was working at Lowe's Home Improvement Warehouse in Fairbanks as a "less than truckload" stocker on November 30, 2009, when a cantilever shelf fell on him. He was treated for back pain and cleared for modified work in early January 2010. Lowe's moved him around to various positions in the store to accommodate his restrictions, but he continued to have pain.

On January 21 Humphrey was disciplined at work for reasons unrelated to his injury. On February 12 he received a generally favorable performance evaluation. On February 16 he wrote a note to Lowe's, saying he was giving two weeks' notice "due to personal reasons (no transportation [and] no house)." The note is somewhat ambiguous, though; it also states, "If nothing is new within these two weeks I will know

it is submitted[;] if does [indecipherable] I will let store manager and Lisa know all new information."[1]

Humphrey's last day of work at Lowe's was Monday, February 22. Humphrey testified that the store manager, Brandon Montgomery, called him into the office that day and told him he was being terminated because he had given his two weeks' notice. Lowe's disputes that Humphrey was terminated, and Montgomery denied having the conversation Humphrey described. Wage records from Lowe's show that Humphrey received a paycheck on February 22 for 40 hours in the week ending February 26;[2] Humphrey testified he was paid through March 1, which is two weeks from the date of his two weeks' notice.

Humphrey continued to receive medical care for his back, and in April 2010 his treating physician recommended that he consider surgery and consult with an orthopedic surgeon. In May, Humphrey moved with his girlfriend and their child to the Las Vegas area, where his girlfriend had family. Humphrey then filed an Alaska workers' compensation claim, seeking medical benefits, temporary total disability (TTD) benefits from January 30, 2009, a rating of permanent partial impairment (PPI), a penalty, interest, and attorney's fees. In January 2011 a Nevada orthopedic surgeon diagnosed Humphrey with "disc abnormalities" and back pain that "stem[med] from his initial work related injury" and in May 2011 performed surgery on Humphrey's back.

A number of medical and lay witnesses testified at the Board hearing on Humphrey's claim. The parties agreed that his last day of work at Lowe's was

---

[1]     The Board read this sentence of the note as saying, "If nothing is new within these two weeks I will know it is submitted if does not I will let store manager and Lisa know all new information."

[2]     Another document from Humphrey's personnel file indicates that Lowe's paid Humphrey through March 1.

February 22, 2010, but they offered conflicting accounts of his departure. Humphrey testified that he notified Montgomery about his transportation and housing problems on February 16 and Montgomery told him to submit his two weeks' notice in case the problems prevented him from returning to work. Humphrey testified that his personal problems resolved within a few days, that he called Montgomery, and that Montgomery told him to come back to work. Humphrey could not recall exactly what day he returned.

Humphrey testified that Montgomery called him on the intercom on February 22 and told him to come to the office. Humphrey said he thought it was related to one of two things: where he had parked his car that day (close to the store, in an area reserved for customers) or whether he had neglected his work while talking to another employee. But according to Humphrey, instead of discussing either of these issues, Montgomery told him that "because [Humphrey] wrote the two weeks' notice . . . what they're going to do is just . . . terminate [him], because after today [Humphrey] would no longer be working for Lowe's." Humphrey testified that Montgomery asked him to write out another two weeks' notice, which he did,[3] and said Lowe's would pay him for the coming two weeks if Humphrey cooperated in his termination.

Witnesses for Lowe's disputed Humphrey's account. Montgomery, the store manager, testified that Humphrey gave the "HR manager, Lisa," a two weeks' notice that he was leaving Lowe's for personal reasons. He testified that Humphrey said it was because he was moving to "Vegas or something like that, with his family and he wasn't going to be able to stay in Alaska." Montgomery said he did not recall saying either that Humphrey "would be able to work out his personal situation and come back to Lowe's and continue working there" or that Humphrey "was either going to have to resign or . . . be terminated," as Humphrey claimed. Montgomery testified he could not

---

[3]     No written notice dated February 22 appears in Humphrey's personnel file.

terminate anyone "without consent from area HR" and that he would have to use progressive discipline first. He denied ever having "a sit-down conversation face-to-face with Mr. Humphrey," as Humphrey described, and said he did not recall ever paging Humphrey to his office.

Kimberly Cook, the operations manager, also testified. She said that Humphrey worked directly for her and was "a great employee" whom she wanted to keep. She testified that Lowe's had accommodated Humphrey's injury-related work restrictions and that it would have continued to do so had he stayed. She said she had not seen Humphrey's written two weeks' notice but that she knew, from Montgomery, that Humphrey "had put his notice in and he withdrew his notice and said he didn't want to leave, and then he decided that he wanted to leave again, and then . . . he withdrew it again." What she remembered out of it, she said, was that Humphrey was going to quit. She testified that he would have talked to Montgomery about quitting, not to her, but that "[f]or the most part" she would have had to be present if an employee she supervised was going to be terminated.

The Board decided a different issue first: that Humphrey's injury was compensable and that he was entitled to past medical benefits. It decided that Humphrey was not yet medically stable from his surgery so he could not be rated, but it ordered Lowe's to pay PPI compensation once that occurred. The Board awarded him TTD benefits from the date of his 2011 surgery until he "reache[d] medical stability or is released to work by his treating physician, whichever occurs first." However, deciding that Humphrey had voluntarily left his job at Lowe's for reasons unrelated to his injury, the Board denied Humphrey's request for TTD benefits from the date of his departure, February 22, 2010, until his surgery in May 2011. Finally, it awarded Humphrey partial attorney's fees of $23,863.35, reducing his requested amount by 30%.

Humphrey filed an appeal with the Commission of the Board's denial of TTD benefits and its attorney's fee award. The Commission decided there was substantial evidence in the record to support the Board's decision that Humphrey voluntarily left his job at Lowe's, and it agreed with the Board that he was not entitled to TTD benefits for the period before his surgery. However, it vacated the Board's attorney's fee award on grounds that (1) the Board did not explain why it had awarded fees under AS 23.30.145(b) (for cases in which the employer resists or otherwise delays payment) rather than AS 23.30.145(a) (for cases in which the employer controverts benefits, as Lowe's did here);[4] and (2) the Board's "terse explanation for reducing the award" prevented the Commission from reviewing its decision.

Humphrey then asked the Commission to award him fees as a successful litigant in the appeal. The Commission denied his motion, writing that "[b]y any standard, Humphrey was not the successful party in this appeal." Humphrey appeals.[5]

---

[4] AS 23.30.145(a) governs an award of fees when an employer controverts benefits; AS 23.30.145(b) permits a fee award against an employer when the employer resists or otherwise delays payment.

[5] Lowe's does not challenge the appealability of the Commission's decision. Following *City & Borough of Juneau v. Thibodeau*, we have required that all issues be resolved in an administrative appeal to the superior court before a decision is final and appealable. 595 P.2d 626, 629 (Alaska 1979). Here the Commission notified the parties that the decision was "a final decision on the merits" as to "the affirmation . . . in part and vacat[ion] in part" but was "a non-final decision as to the . . . remand of the matter in part to the [B]oard." Because neither party raised the applicability of *Thibodeau*, and because the attorney's fee dispute being remanded to the Board is severable from the issues of TTD and appellate fees, we do not consider whether the Commission's entry of what is in effect a partial final judgment was proper. *See* Alaska R. Civ. P. 54(b) (permitting entry of final judgment on separate issues in trial court).

## III. STANDARDS OF REVIEW

In a workers' compensation appeal from the Commission, we review the Commission's decision rather than the Board's and apply our independent judgment to questions of law not involving agency expertise.[6] We independently review the Commission's conclusion that substantial evidence in the record supports the Board's factual findings by independently reviewing the record and the Board's findings.[7] When the Commission makes factual findings, its "findings of fact may be reversed on appeal if not supported by substantial evidence in light of the whole record."[8] Whether the Commission correctly applied the law in determining an award of attorney's fees is a question of law we review de novo.[9]

## IV. DISCUSSION

### A. The Commission Correctly Concluded That Substantial Evidence In The Record Supported The Board's Decision Denying Temporary Total Disability Benefits.

The Board denied Humphrey TTD benefits for February 22, 2010 to May 17, 2011 because it found he had voluntarily left his work at Lowe's for reasons unrelated to his injury and thus removed himself from the labor market for that period.[10]

---

[6] *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010) (citing *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1125 (Alaska 2008)).

[7] *Id.*

[8] AS 23.30.129(b).

[9] *Lewis-Walunga v. Municipality of Anchorage*, 249 P.3d 1063, 1066 (Alaska 2011) (citing *Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 252 (Alaska 2009)).

[10] Humphrey did not raise as an issue on this appeal, and so we do not consider, whether a voluntary departure disqualified him from receiving compensation

(continued...)

Applying AS 23.30.122 and the substantial evidence test, the Commission held that "the board's finding that Humphrey voluntarily quit his job was amply supported by the evidence." The Commission concluded that Humphrey was not totally disabled during the period at issue because "his medical providers released him to perform light-duty work and Lowe's provided it."

Both the Board and the Commission relied on *Vetter v. Alaska Workmen's Compensation Board*, where we held, "If a claimant, through voluntary conduct unconnected with his injury, takes himself out of the labor market, there is no compensable disability."[11] We also stated that "[a]n award of compensation must be supported by a finding that the claimant suffered . . . a decrease in earning capacity due to a work-connected injury or illness," and we set out several factors relevant to this inquiry, including the claimant's age and education, the employment available in the area for people with the claimant's capabilities, the extent of the injury, and the claimant's "intentions as to employment in the future."[12]

Under *Vetter*, Humphrey's claim that he was entitled to TTD benefits depended on a finding that he had not voluntarily removed himself from the labor market. He focuses his argument on the Board's analysis of the statutory presumption of compensability and the substantiality of the evidence the Board used to support its conclusion.[13] The presumption attaches if the employee establishes a link between his

---

[10](...continued)
benefits for some part less than the whole of that period.

[11]     524 P.2d 264, 266 (Alaska 1974).

[12]     *Id.*

[13]     *See* AS 23.30.120(a) ("In a proceeding for the enforcement of a claim for
(continued...)

employment and the injury; at this step of the analysis "only evidence tending to establish the link is considered — competing evidence is disregarded."[14]  Humphrey asserts that the presumption applies to his claim that he "did not voluntarily remove himself from the workforce, unrelated to [his] work injury," citing *Sokolowski v. Best Western Golden Lion Hotel*.[15]  The Board did apply a presumption analysis, finding that, through Humphrey's testimony and that of his girlfriend, he had attached the presumption that "he was unable to work because of his work injury from February 2010 forward."  Lowe's appears to agree both that the presumption applied to the voluntary-departure question and that there was enough evidence of work-relatedness for the presumption to attach.

In the second step of the presumption analysis, the Board found that Lowe's rebutted the presumption with evidence that Humphrey "voluntarily quit his position at Lowe's and thus removed himself from the workforce."[16]  In this step the Board looks

---

[13](...continued)
compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that (1) the claim comes within the provisions of this chapter. . . .").

[14]     *McGahuey v. Whitestone Logging, Inc.*, 262 P.3d 613, 620 (Alaska 2011).

[15]     813 P.2d 286, 292 (Alaska 1991).

[16]     The Board also included as evidence rebutting the presumption the reports of the employer's physicians that Humphrey was medically stable.  Humphrey argues that the Board could not rely on these opinions at the second stage because by the time of the hearing it knew that Humphrey was in fact not medically stable.  We have held that "a prediction of medical stability that turns out to be incorrect cannot provide substantial evidence to rebut the presumption."  *Burke v. Houston NANA, L.L.C.*, 222 P.3d 851, 862 (Alaska 2010) (citing *Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1256 (Alaska 2007)).  But because the Board used other evidence at the rebuttal stage and did not use the medical evidence at the third stage of the presumption analysis, and because the Commission did not use the employer's medical evidence to affirm the
(continued...)

at the proffered evidence in isolation without weighing it and decides whether it is substantial.[17] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Whether the quantum of evidence is substantial is a question of law.[19] We "must take into account whatever in the record detracts" from the weight of evidence when we consider whether evidence is substantial,[20] but we do not choose between competing inferences or reweigh the evidence.[21]

The Board relied on the testimony of Humphrey's supervisor and the store's operations manager to decide that Lowe's rebutted the presumption. Cook testified that Humphrey quit his job, that he was "a great employee" whom she wanted to retain, and that she would generally have to be present if the store manager fired one of her employees. Montgomery, too, recalled that Humphrey had voluntarily quit. He testified he did not recall ever giving Humphrey the choice of resigning or being terminated, as Humphrey testified, and denied ever having "a sit-down conversation" with him at all.

---

[16](...continued)
Board's decision, any error was harmless.

[17] *McGahuey*, 262 P.3d at 620.

[18] *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000) (citation and internal quotation marks omitted).

[19] *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 630 (Alaska 2011) (citation omitted).

[20] *Id.* (quoting *Lopez v. Adm'r, Pub. Emps.' Ret. Sys.*, 20 P.3d 568, 570 (Alaska 2001)) (internal quotation marks omitted).

[21] *Cowen v. Wal-Mart*, 93 P.3d 420, 424 (Alaska 2004) (quoting *Steffey v. Municipality of Anchorage*, 1 P.3d 685, 689 (Alaska 2000)).

Documentary evidence from Lowe's also supported its position: Humphrey's personnel file contains his February 16 note that he was quitting due to transportation and housing difficulties as well as evidence that his termination date was two weeks later on March 1, consistent with a finding that he quit on two weeks' notice. The records also show he was eligible for rehire, and they give no indication that he underwent progressive discipline, as Montgomery testified was required to precede termination.

It is true, as Humphrey contends, that Lowe's submitted evidence that might have supported Humphrey's argument as well; but it is not so "dramatically disproportionate" to the evidence against it as to preclude affirming the Board's decision.[22] As an example, Humphrey cites the notes of the workers' compensation insurance adjuster stating he "was terminated";[23] but the adjuster's notes later say he "put in 2 weeks notice, he was not term[inat]ed by Lowe's."

Though the evidence thus conflicts, a reasonable mind could accept it as sufficient to support a conclusion that Humphrey voluntarily quit his job at Lowe's for reasons unrelated to his injury. The evidence therefore rebuts the presumption that his departure was injury-related.[24]

---

[22]     *Shea*, 267 P.3d at 634 n.40.

[23]     Lowe's argues that "terminate" is ambiguous in context and could mean simply "conclude," but the grammatical construction of the sentence is more consistent with Humphrey's interpretation. *See* Bryan A. Garner, Garner's Dictionary of Legal Usage 659 (3d ed. 2011) (explaining that in the passive voice, the subject of the sentence "is acted upon").

[24]     Humphrey argues that the Board erred in not specifically finding that his departure from the workforce was unrelated to his injury. But in the context of the governing law, which the Board applied, its finding that Humphrey voluntarily quit
(continued...)

Once the presumption is rebutted, the burden shifts to the employee to prove his claim by a preponderance of the evidence.[25] Humphrey therefore had to convince the Board, by a preponderance of the evidence, that he left involuntarily (and for reasons other than misconduct, which would disqualify him from benefits).[26] The Board acknowledged that "the testimony and evidence about [Humphrey's] departure from Lowe's [was] conflicting," but it thought "the most likely explanation" was that Humphrey voluntarily quit, a conclusion the Commission affirmed. Humphrey contends that the Commission erred in deciding that substantial evidence supported the Board's finding and that the Commission further erred because the Board's findings were inadequate. He argues that the testimony of the witnesses the Board found credible was inconsistent, that the Board needed to explain the inconsistencies, and that the Commission erred by accepting the Board's decision.

But we have never required the Board to explain every inconsistency in lay testimony. And even if the witnesses for Lowe's testified inconsistently in some details, their testimony as a whole supported the company's position that Humphrey voluntarily quit. The Commission had to accept the Board's determination that Montgomery and Cook were credible and Humphrey was not, as the Board's credibility findings are

---

[24](...continued)
necessarily implies that he left work for other reasons.

[25]    *Cowen*, 93 P.3d at 426 (citation omitted).

[26]    *See Vetter v. Alaska Workmen's Comp. Bd.*, 524 P.2d 264, 266 (Alaska 1974) (noting that disqualification is proper when employee is terminated for misconduct not related to injury); *see also Robles v. Providence Hosp.*, 988 P.2d 592, 594-96 (Alaska 1999) (discussing disability eligibility when employer could no longer accommodate worker's disability).

binding on the Commission by statute.[27] Although Humphrey can again point to conflicting evidence, we have held many times that conflicting evidence is insufficient to overturn a decision of the Board when there is substantial evidence that supports it.[28]

Setting aside for the moment the issue of whether Humphrey left Lowe's voluntarily, we observe that TTD benefits can be paid when the employee is totally disabled from work, even if he stopped working for other reasons.[29] But Humphrey points to no evidence from the period of disqualification — such as a doctor's note — that would support a conclusion that he was totally disabled during that time. When his employment at Lowe's ended, he had been released by his doctor to work with restrictions, which Lowe's appeared to be accommodating. Humphrey testified at the hearing that he minimized his pain in discussions with a healthcare provider so that he could return to work more quickly, and he emphasizes on appeal that he was still in considerable pain when he returned to work. But Lowe's was justified in relying on the doctor's note when making Humphrey's work assignments.

Humphrey also argues that the Board failed to make findings about his "intentions of reentering the workforce following his departure from the workforce" in February 2010. While there is evidence that Humphrey was generally motivated to work, as he contends, he points to no evidence showing that he made efforts to find suitable work after his departure from Lowe's, either in Fairbanks or in Nevada.

---

[27]    *Sosa de Rosario v. Chenega Lodging*, 297 P.3d 139, 146 (Alaska 2013) (quoting AS 23.30.128(b)).

[28]    *See, e.g., Robinson v. Municipality of Anchorage*, 69 P.3d 489, 493 (Alaska 2003).

[29]    *Cortay v. Silver Bay Logging*, 787 P.2d 103, 107-08 (Alaska 1990).

Because he does not show that this issue was both material and contested at the hearing, we cannot fault the Board for failing to make a finding about it.[30]

In sum, substantial evidence in the record supports the Board's finding that Humphrey voluntarily left his job at Lowe's and thus removed himself from the workforce for reasons unrelated to his injury, and we affirm the Commission on this issue.

**B.    The Commission Erred In Denying Attorney's Fees To Humphrey For The Appeal.**

We agree with Humphrey, however, that the Commission should have awarded him attorney's fees for his appeal.  Although he was unable to persuade the Commission that the Board erred in its decision to deny TTD benefits, he raised enough questions about the sufficiency of the Board's award of attorney's fees that the Commission vacated the award and remanded the issue to the Board; the Commission concluded that the existing findings were inadequate for appellate review and that the Board needed to discuss the applicability of AS 23.30.145(a), the fee statute that apparently governed Humphrey's request for fees before the Board. Despite this remand, however, the Commission denied Humphrey's request for attorney's fees for the appeal under AS 23.30.008(d),[31] deciding that "[b]y any standard, Humphrey was not the successful party in this appeal."

---

[30]    *Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1275 (Alaska 1999) (citations omitted).

[31]    AS 23.30.008(d) provides that the Commission "shall award a successful party" who is represented by counsel "attorney fees that the commission determines to be fully compensatory and reasonable."

Humphrey argues that his case is controlled by *Lewis-Walunga v. Municipality of Anchorage*[32] and that the Commission erred in deciding he was not a successful party on appeal. Lowe's attempts to distinguish *Lewis-Walunga* by arguing that the "primary issue" on appeal in this case was the TTD claim and, with respect to the attorney's fees issue, that Humphrey did not get what he asked for.

In *Lewis-Walunga*, we reversed the Commission's denial of attorney's fees to a claimant and held that "a claimant is a successful party in an appeal to the Commission when the claimant prevails on a significant issue in the appeal."[33] We reviewed the Commission's findings on what the claimant had sought and obtained by appealing, and we decided the finding that she had not won "the essential element" of the relief she sought was not supported by substantial evidence.[34]

Following *Lewis-Walunga*, a claimant who prevails on "*a* significant issue" on appeal is a successful party;[35] there is no requirement that the claimant prevail on all issues or even the main issue. Humphrey's appeal to the Commission presented two significant issues: TTD and attorney's fees. With regard to the fee award, Humphrey argued that the Board had incorrectly applied AS 23.30.145(a); had failed, in its fee award, to consider parts of the claim on which he prevailed; and had failed to consider that he in fact won the main issue before the Board, the compensability of his continued disability. Humphrey asked for a remand with instructions to enter an increased fee award. Although the Commission did not give that instruction in its remand, it did give

---

[32]    249 P.3d 1063 (Alaska 2011).

[33]    *Id.* at 1068.

[34]    *Id.* at 1069-70.

[35]    *Id.* at 1068 (emphasis added).

Humphrey an opportunity for an increased fee award from the Board that he would not have had absent the Commission's decision.[36]

In refusing to award fees for the appeal, the Commission said, "[W]hether the board awards [Humphrey] more attorney's fees on remand remains to be seen." But in *Lewis-Walunga* we rejected the notion that success on appeal is tied to success on the underlying claim: there we interpreted the legislature's use of the phrase "[i]n an appeal" in AS 23.30.008(d) as a "signal that the Commission's fee award is independent of success in the underlying claim."[37] It was therefore error for the Commission in this case to consider, in its fee decision, the possibility that Humphrey might not win on remand to the Board. Humphrey is entitled to "fully compensable and reasonable" attorney's fees for his appeal to the Commission under AS 23.30.008(d).[38]

## V. CONCLUSION

Because the Commission correctly concluded that substantial evidence in the record supported the Board's TTD decision, we AFFIRM that part of the

---

[36] *Cf. Municipality of Anchorage v. Anderson*, 37 P.3d 420, 422 (Alaska 2001) (Matthews, J., dissenting) (stating that claimant was not a "successful claimant" on appeal because he "gained no advantages by the appeal that were not already available to him simply by complying with the board's order").

[37] *Lewis-Walunga*, 249 P.3d at 1069.

[38] Humphrey included an argument about the Board's fee award in his brief, but Lowe's contends the argument is waived because it was not included in the points on appeal. We do not decide the merits of the issue because the Commission has remanded it to the Board. We do note, however, that Humphrey succeeded on his controverted claim for compensation for his continued disability and medical treatment. Alaska Statute 23.30.145(a) establishes a minimum fee award under such circumstances. The purpose of the law is "to make attorney fee awards both *fully* compensatory and reasonable so that competent counsel will be available to furnish legal services to injured workers." *Cortay v. Silver Bay Logging*, 787 P.2d 103, 108 (Alaska 1990) (emphasis in original) (citations and internal quotation marks omitted).

Commission's decision.  We REVERSE its denial of attorney's fees for Humphrey's appeal to the Commission  and REMAND for proceedings consistent with this opinion.