*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HARVEY MARK EDER, | ) | |
| | ) | Supreme Court No. S-15871 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 14-017 |
| | ) | |
| M-K RIVERS and | ) | O P I N I O N |
| WESTCHESTER FIRE INSURANCE | ) | |
| CO. | ) | No. 7130 – October 21, 2016 |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Harvey Mark Eder, pro se, Santa Monica, California, Appellant. Randall J. Weddle and Troy D. Bittner, Holmes Weddle & Barcott, P.C., Anchorage, for Appellees.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

STOWERS, Chief Justice.

## I. INTRODUCTION

In 2012 a worker whose Alaska workers' compensation case was closed in 1977 filed a new claim related to his injury from the 1970s. The Alaska Workers' Compensation Board dismissed the new claim, and he appealed to the Alaska Workers' Compensation Appeals Commission. The Commission granted the worker three

extensions of time to file his brief and later issued an order to show cause why the appeal should not be dismissed. The Commission dismissed the appeal, relying on its interpretation of a Board regulation. We reverse the Commission's decision.

## II.    FACTS AND PROCEEDINGS

Harvey Eder worked for MK-Rivers on a construction project related to the Alaska pipeline. He injured his neck at work in July 1975 and received temporary total disability (TTD) for the injury. In a 1977 decision the Alaska Workers' Compensation Board denied further TTD because it thought Eder was "exaggerating his problems for secondary gain (additional compensation)."

Eder moved back to California and at one point worked for a locksmith. He was injured in a work-related car accident in the early 1980s while working for that business and received California workers' compensation benefits for those injuries. Doctors in California attributed a percentage of Eder's disability to the initial Alaska injury.

Eder filed a pro se written claim for permanent total disability (PTD) in Alaska in 1986; the record reflects that he was raising a claim for a "latent defect" at that time. Shortly after Eder filed the claim an attorney entered an appearance on his behalf. Nothing in the record indicates the Board held a hearing on the 1986 claim, and at the 2014 hearing M-K Rivers's attorney said, "That [1986 claim] disappeared. It just went away." The record contains several depositions taken in the Alaska case from the 1980s as well as a "Statement of Readiness to Proceed" filed on Eder's behalf. In the Board's 2014 decision, the Board did not discuss the 1986 written claim, saying only that Eder "sought assistance from [an] . . . attorney . . . in 1986 to explore reopening his claim"; the Board noted Eder's testimony that his attorney had died and because of his death "the claim was not pursued."

Eder began to experience mental health problems at some point in the

1980s. His psychiatric diagnoses included paranoid schizophrenia, polysubstance abuse disorder, dysthymic disorder with anxiety, and "somatic delusion." His treating psychiatrist in California attributed his mental decompensation to the work-related car accident, and the judge in the California workers' compensation case apportioned about 60% of Eder's mental disability to that accident.

In 2012, for reasons that are not readily apparent from the record, Eder sought to reopen his Alaska workers' compensation case, again requesting PTD. At a prehearing conference his claim was amended to include permanent partial impairment, medical and transportation benefits, reemployment benefits, and penalties and interest. M-K Rivers filed an answer and several controversion notices. It then filed a petition to dismiss the claim based on res judicata grounds, arguing that the claims Eder was making in 2012 had been decided in the 1977 decision.

After a hearing the Board dismissed Eder's 2012 claim on res judicata grounds, rejecting Eder's "implicit" theory that the time for appeal of the 1977 decision should have been tolled because he was mentally incompetent throughout this time period. Noting that Eder had contacted an Alaska attorney in 1986, the Board thought Eder's California workers' compensation case contained ample evidence that he was at least competent enough to cooperate with attorneys to secure benefits.

Eder appealed to the Alaska Workers' Compensation Appeals Commission. He requested and was granted a waiver of fees and transcription costs. He then asked for a series of extensions of time in which to file his opening brief. The first motion is fairly legible; in it Eder asked for a ten-day extension so that he could copy an additional 2,004 pages from the Board record and "look for missing evidence."[1] He also asked that

---

[1]     He did not explain what evidence might be missing.

his employer pay for his travel expenses because he was homeless.[2]  The Commission granted a ten-day extension of time.

The Commission clerk wrote a memo to the file in October 2014, recording a series of phone calls from Eder and her investigation of the questions he raised.  Eder indicated he had two "CDs that contained 7,200 pages of the record" but he was "trying to figure out what the other 2,300 pages in the record [were]."  The Commission clerk called the Board; according to her memo, the CD contained the Board record as of February 2014, when Eder had requested a copy of the record; because Eder had not made another request for a copy, the Board had not supplied him with a copy of the rest of the file.  A later note in the record shows that the Board did not have the last 2,300 pages of the record on a CD.[3]

Eder filed two additional requests for extensions of time to file his brief in the Commission, both of which appear to be copies of the initial request with additional writing on them.  The second motion informed the Commission that Eder was still homeless and asked for up to 90 days to file his brief.  The third request contained additional writing that is largely illegible.  The Commission granted both requests, but

---

[2]  A memo to the file from the Commission's clerk indicates that Eder called and reported that he had spoken with the insurer's attorney, who agreed to a 30-day extension of time but would not agree to pay for Eder to come to Alaska to review the record.

[3]  There may have been some miscommunication about the CD.  A Board employee wrote Eder in February 2014 to tell him that the Board had scanned his 7,358 pages of "medical records" into the Board's "ICERS database."  The Board evidently sent copies of a CD containing the records to Eder and M-K Rivers and told Eder the records had not yet been admitted into evidence.  A California attorney had also sent copies of documents from the California case to M-K Rivers's attorney, who copied the documents, numbered them, and returned them.  There was evidently some question whether the documents Eder sent to the Board were the same documents the attorney had sent to M-K Rivers.

it indicated that the third one would be the last.  On the same day that Eder asked for the third extension of time, he filed copies of the Commission's pro se briefing forms with what appear to be handwritten notes on them as well as Board forms related to medical records.  Much of the writing is indecipherable, but some of it appears to refer to Eder's case.  For example, underneath "why didn't I appeal" is written "severe depression"; the document also refers to transcripts and a "missing record of tape" from 1976.

In the December 23, 2014 order granting the third extension, the Commission cited one of its regulations[4] and notified Eder that if he failed to "file his opening brief and excerpt of record on or before **Friday, January 16, 2015,** his appeal may be dismissed for failure to prosecute."  Eder filed a petition for review of the Commission's third order with this court.

In January Eder filed two motions with the Commission:  a fourth motion for extension of time and a motion to stay the proceedings while the petition for review was pending.  The Commission denied the request for extension of time, noting that it had previously granted several extensions of time, for a total of 80 days.  It decided it would only stay the proceedings if this court granted review.  We denied review on February 3, 2015.

On January 29 the Commission issued an Order to Show Good Cause,

---

[4]     8 Alaska Administrative Code (AAC) 57.250(a) (2011) provides:

If an appellant fails to comply with AS 23.30.125 – 23.30.128, fails to comply with this chapter, fails to pay the cost of preparing the transcript, as provided in 8 AAC 57.120(j), or fails to comply with an order of the chair or commission, the chair will issue written notice to the appellant that specifies the nature of the failure and states that the appeal may be dismissed for failure to prosecute if the appellant fails to take appropriate corrective action no later than 20 days after receipt of the notice.

giving Eder about two weeks to show cause why his appeal should not be dismissed for failure to prosecute. Eder responded, saying that (1) he did not have "the missing evidence [his] file added"; (2) he was homeless; and (3) he was heavily in debt, which made his compensable disability greater. He argued that the balance of hardships "cite[d]" that the "information (as stated in [his] recent motion) should be provided to [him]" and "incorporat[ed] all of [his] record in this case by reference that support[ed] his] position."

The Commission dismissed the appeal. Calling Eder's personal circumstances "unfortunate," the Commission decided there was "no applicable 'balance of hardships' law requiring the commission to provide [Eder] with the requested documents/evidence." Instead, the Commission cited a Board regulation and said that regulation "precludes the workers' compensation division, which includes the commission, from providing documents/evidence at no charge to [Eder]."

Eder appealed the dismissal.[5] Concerned that some of Eder's briefing suggested he wanted this court to review the substance of the Board's decision, M-K Rivers moved to limit the appeal to the question whether the Commission abused its discretion in dismissing the appeal, arguing that the Commission had yet to review the merits of the Board's decision. We granted M-K Rivers's motion.[6] The sole issue before us is thus whether the Commission's dismissal decision was correct.

## III. STANDARD OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals

---

[5]     As part of Eder's motion to waive fees he asked for a copy of the record; the appellate clerk's office sent him a CD with a scanned copy of the record.

[6]     Eder also moved for a stay of the present appeal pending Board action on another claim. We denied the stay.

Commission, "we review the Commission's decision rather than the Board's."[7]  We apply our independent judgment to questions of law that do not involve agency expertise.[8]  Our review of an agency's interpretation of its own regulation is reviewed under the reasonable basis standard, but "we independently review whether a regulation applies to a case."[9]  Review of an agency's application of its own regulations to the facts of a case "is limited to whether the agency's decision was arbitrary, unreasonable, or an abuse of discretion."[10]  We will find an abuse of discretion when the agency action is "arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive."[11]

## IV.   DISCUSSION

### A.   The Commission Abused Its Discretion In Dismissing Eder's Appeal.

#### 1.   8 AAC 45.030

Ultimately this appeal is about access to the appellate record for pro se litigants in workers' compensation cases.  Even though Eder's pleadings are difficult to read at times, the record is clear that he sought a complete copy of the Board record before he filed his brief with the Commission.[12]  Accessing the record can be an

---

[7]      *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014).

[8]      *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 343 (Alaska 2011).

[9]      *Garner v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance*, 63 P.3d 264, 268 (Alaska 2003).

[10]      *Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007) (quoting *Hodges v. Alaska Constructors, Inc.*, 957 P.2d 957, 960 (Alaska 1998)).

[11]      *Sheehan v. Univ. of Alaska*, 700 P.2d 1295, 1297 (Alaska 1985) (quoting *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

[12]      He makes clear in his opening brief before us that he wants "a complete hard copy" of the record.

important part of presenting an appeal, and it is not clear whether or when the Commission waives for self-represented litigants its requirement that an excerpt of record be filed.[13]

In reaching its decision here the Commission applied its own regulations about dismissal of appeals, but it also relied on one of the Board's regulations. The Commission cited 8 AAC 45.030, a Board regulation, reasoning that this regulation "precludes the workers' compensation division, which includes the commission, from providing documents/evidence at no charge to the appellant." The Commission did not identify which subsection of the regulation it was interpreting.

Eder argues that he was unable to get a complete copy of the record and that, without a copy of the record, he "can't file an [excerpt] of the record." Eder disagrees with the Commission's interpretation of the Board's regulation; he says the Commission "lies when they say that they are required by state [l]aw not to get [him] a copy of [the] 'whole record' [so he] . . . could write [his] opening brief" because the regulation says "may" rather than "shall." Eder also appears to argue that he submitted "a very casual" rough draft of a brief to the Commission and complains that the Commission denied him more time to complete the briefing.[14]

M-K Rivers argues that the Commission's decision should be upheld under the abuse of discretion standard because the Commission properly applied applicable statutes and regulations. It also argues that Eder did not show good cause to the Commission because Eder's "Show of Good Cause contained no basis upon which good

---

[13]    8 AAC 57.170 provides that "[p]arties shall prepare excerpts of record" that are due at the same time as their briefs. 8 AAC 57.180 lists certain documents that "must" be in the excerpt of record.

[14]    We assume this assertion is related to the documents Eder filed with his third motion for extension of time.

cause could be found." M-K Rivers also cites a Board regulation, 8 AAC 45.030(c), requiring an appellant to pay the cost of preparing the record on appeal as a basis to justify the Commission's decision. It argues that Eder was not adequately diligent in pursuing the appeal, that the Commission provided him adequate time to file a brief, and that continued delay would frustrate the purpose of providing "a 'prompt, fair, and just disposition' of the appeal."

We disagree with M-K Rivers's contention that the Commission properly applied the applicable regulations. Even assuming that the Board's regulation applies to the Commission,[15] the regulation does not prohibit the Division of Workers' Compensation from waiving copying fees for indigent parties. The first subsection of the regulation provides: "The division will charge no fees for any act done by it except (1) reasonable duplication fees may be charged for copying board files, papers, documents, orders, or decisions . . . ."[16] The regulation then permits the division, "for reasons of administrative convenience," to "refuse to duplicate or copy material for a person, provided the material sought is available for copying at a division office during

---

[15] By its terms, 8 AAC 45.030 applies to the "division," which is defined as "the division of workers' compensation within the administrative branch of the Department of Labor and Workforce Development." 8 AAC 45.900(a)(8). 8 AAC 45.030 was most recently amended in 1983, *see* Alaska Administrative Code, Register 86 (July 1983), long before the Commission's creation, *see* ch. 10, § 8, FSSLA 2005, and is in a part of the Alaska Administrative Code entitled "Compensation, Medical Benefits, and Proceedings Before the Alaska Workers' Compensation Board." *See* 8 AAC pt. 3, ch. 45 (2011). Alaska Statute 23.30.008(c) allows the Commission to promulgate "regulations implementing the commission's authority and duties under [the Alaska Workers' Compensation Act], including rules of procedure . . . for proceedings before the commission." The Commission has promulgated regulations setting out procedural rules in appeals to it, *see, e.g.*, 8 AAC 57.090, so it is not clear why the Commission considered itself bound by 8 AAC 45.030 here.

[16] 8 AAC 45.030(a). 8 AAC 45.030(a)(2) permits the division to charge for duplicating tapes.

normal business hours."[17] And 8 AAC 45.030(c), the regulatory subsection M-K Rivers cites in its brief, requires an appellant to "pay the cost of preparing the record on appeal" and provides that "[t]he division will not certify the administrative record until all costs of record preparation have been paid."

Although M-K Rivers relies on the part of the regulation about preparing the record on appeal, we see no indication that there was any difficulty in preparation of the record for appeal. The Board supplied the record to the Commission promptly — the Board's record was filed less than a month after Eder's notice of appeal — and nothing in the record suggests either that Eder was required to pay for preparation of the record or that his failure to pay for preparation was in any way connected to the dismissal. And if 8 AAC 45.030(c) was the basis for the Commission's refusal to provide Eder with a copy of the record, the Commission's determination that it was bound by the provision related to payment for copying would be inconsistent with its treatment of transcription fees. 8 AAC 45.030(c) requires the party requesting a transcript to pay the transcription fee, but the Commission's regulation permits it to waive transcription fees,[18] and the Commission in fact waived the fee here. Assuming any part of 8 AAC 45.030 can be read as prohibiting provision of free copies to an indigent litigant, we fail to see why the Commission would feel bound by that part of the regulation when it considered itself able to override the same regulation with respect to transcription fees.

The remainder of the regulation permits the division to charge for copying and to refuse to make the copies itself as long as it makes the record available for

---

[17]     8 AAC 45.030(b).

[18]     8 AAC 57.090(c)(2).

-10-                                                    7130

copying at a division office.[19]  Nothing in the regulatory language prohibits the division from waiving copying costs, and the Board's action here in providing Eder with a CD containing part of the record suggests that the division has not interpreted the regulation as the Commission did.  Furthermore, we note that the Commission itself made a copy of the record at no charge to an indigent litigant in an earlier case.[20]  We thus conclude that the regulation does not forbid the Commission from waiving copying costs for an indigent litigant,[21] and we note we have previously found a denial of due process when an agency dismissed an administrative appeal after failing to provide access to the administrative record.[22]

> **2.  The Commission did not make adequate findings to permit review of a finding of good cause.**

M-K Rivers also argues that the Commission properly applied its regulation about dismissal for failure to prosecute an appeal and that dismissal was justified because Eder failed to show good cause why his appeal should not be dismissed.  M-K Rivers

---

[19]     8 AAC 45.030(a)-(b).

[20]     *Khan v. Adams & Assocs.*, AWCAC Dec. No. 057 at 4 (Sept. 27, 2007).

[21]     As we noted above, this court provided Eder with a scanned copy of the record.  In his brief before us, he indicates that he wants a hard copy of the record rather than an electronic one.  He does not explain why he needs a hard copy of the entire record, and we see no need to provide him with one in light of the large number of pages in it that are duplicate records from his California case.

[22]     *Copeland v. Ballard*, 210 P.3d 1197, 1204-06 (Alaska 2009) (observing that litigants "have a strong interest in accessing the record" because "it is the platform upon which they must build their case"); *see also Bustamante v. Alaska Workers' Comp. Bd.*, 59 P.3d 270, 273 (Alaska 2002) (reversing superior court's decision not to waive transcription fees for indigent litigant); *Baker v. Univ. of Alaska*, 22 P.3d 440, 442-43 (Alaska 2001) (reaffirming principle "that 'the size of a party's bank account' should not 'foreclose [that] party's opportunity to be heard' " (citation omitted) (quoting *Peter v. Progressive Corp.*, 986 P.2d 865, 872 (Alaska 1999) (alteration in original)).

lists the following factors the Commission has considered in other cases about good cause to dismiss an appeal: "whether appellant's non-compliance was due to circumstances beyond his control, whether appellant was somehow prevented from complying, and whether appellant made a good-faith effort to comply." Acknowledging that Eder "cited his homelessness and financial difficulties" in his response to the Commission's Order to Show Good Cause, M-K Rivers nonetheless contends that Eder made no good faith effort to comply with the Commission's deadlines pointing to the "significant series of delays" and the "haphazard nature of his filings."

Assuming the Commission adequately complied with its regulation about dismissal,[23] the Commission's sole rationale for dismissing Eder's appeal was its interpretation of 8 AAC 45.030 as prohibiting it (or the Board) "from providing documents/evidence at no charge to the appellant." Aside from remarking about Eder's "unfortunate" circumstances, the Commission made no findings about good cause. It made no findings about whether Eder had made a good faith effort to comply with its deadlines or whether Eder had not complied due to circumstances beyond his control. Unlike the pro se litigant in *Khan v. Adams & Associates*, Eder timely filed a responsive

---

[23] A Commission regulation sets out several necessary steps for the Commission to take before it may dismiss an appeal for failure to prosecute. 8 AAC 57.250. "If an appellant fails to comply . . . with an order of the chair or commission," the first step is issuance of "a written notice to the appellant that specifies the nature of the failure and states that the appeal may be dismissed . . . if the appellant fails to take appropriate corrective action no later than 20 days after receipt of the notice." 8 AAC 57.250(a). Here, the Commission did not wait for Eder to fail to comply with its order before it issued the written notice warning of possible dismissal — the written notice was part of the order granting Eder's third request for an extension of time. Eder could not have failed to comply with that order before the deadline in it, so it is unclear whether the Commission complied with the first step of its regulation.

pleading to the Commission's order to show good cause.[24] His request for access to the record was clear even if his other pleadings were not, and it was unlikely Eder's circumstances would change while the appeal was pending so that he could pay for either copies of the record or travel to Alaska. Additionally, the Commission clerk documented a conversation with Eder that indicates he tried to obtain the remainder of the record from the Board in December 2014. Because the Commission failed to make findings related to good cause, we cannot "fill the gap" by making our own findings.[25]

We acknowledge that Eder's pleadings are difficult to decipher, particularly when they are handwritten. Nonetheless the pleadings he supplied to the Commission indicated that he wanted a copy of the record and was making an effort to comply with Commission procedures. If the Commission doubted Eder's motivation in filing what he did or thought it needed more evidence to make findings, it could have held a hearing[26] or suggested some alternative way for him to comply with the appeals process. The Commission's rationale for failing to provide him with a copy was erroneous, and it made no other findings about Eder's circumstances or lack of good faith.

## V. CONCLUSION

We REVERSE the Commission's decision and REMAND for further proceedings.

---

[24] *Khan*, AWCAC Dec. No. 057 at 2-3.

[25] *See Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1275 (Alaska 1999) (observing that a remand is needed when the Board fails to make a necessary finding).

[26] *See Lawson v. State, Workers' Comp. Div.*, AWCAC Dec. No. 110 at 4-7 (May 29, 2009) (describing hearing to ascertain reasons for late filing).