NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KAMIL MAALAH, | ) | |
| | ) | Supreme Court No. S-17537 |
| Petitioner, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 18-022 |
| | ) | |
| TRIDENT SEAFOODS and LIBERTY | ) | MEMORANDUM OPINION |
| INSURANCE CORP., | ) | AND JUDGMENT* |
| | ) | |
| Respondents. | ) | No. 1808 – December 16, 2020 |
| | ) | |

Petition for Review from the Alaska Workers' Compensation Appeals Commission.

Appearances: Kamil Maalah, pro se, Everett, Washington. Jeffrey D. Holloway, Babcock Holloway Caldwell & Stires, PC, San Diego, California, for Respondents.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.

## I.    INTRODUCTION

A worker filed a workers' compensation claim for several benefits related to separate injuries that three doctors initially agreed likely were work related, although one doctor later changed his opinion about whether an injury was work related. The Alaska Workers' Compensation Board denied all the worker's claims based in part on the doctor's revised opinion. The worker appealed to the Alaska Workers'

---

\*     Entered under Alaska Appellate Rule 214.

Compensation Appeals Commission; it reversed in part the Board's decision and remanded the case to the Board.

The worker filed an appeal to us, and the parties briefed the matter as if it were an appeal from a final agency decision. But procedurally the worker was limited to filing a petition for review of the Commission's interlocutory decision. We therefore converted the appeal to a petition for review and granted review. After reviewing the matter, we affirm the Commission's decision in most respects.

## II.    FACTS AND PROCEEDINGS

Kamil Maalah worked for Trident Seafoods over the course of about seven years, although his employment history is disputed. He started working for Trident in 2008 as a processor in Petersburg, but at some point he began working as an environmental technician in Akutan. He alleges that exposure to loud noise at work caused permanent hearing loss and that his work caused a prolonged outer ear infection.

Maalah's English language proficiency is limited, and he had an interpreter at his deposition, the Board hearing, and some medical appointments. He has represented himself throughout the workers' compensation proceedings.

Trident evidently conducted periodic hearing screening tests while Maalah was employed. A 2013 screening report indicated that Maalah had "moderately severe" hearing loss in high frequencies in both ears. Maalah's name appeared on a list of employees having "possible recordable hearing loss" in early June 2014, and a hearing test in late June confirmed that the hearing loss remained.

In August 2015 Maalah went to Trident's Akutan clinic with an earache and complaint of "[d]ecreased hearing" in his left ear for a few months. The healthcare provider diagnosed an outer ear infection, gave Maalah medication to treat it, and returned him to work. Maalah returned to the clinic about 12 days later because his symptoms persisted. The provider said she would "instill ear drops [every day]" due to

her concern about how "compliant [Maalah was] being." Maalah also went to the village clinic, where he was treated for eustachian tube dysfunction and an outer ear infection. Maalah reported that the ear pain's onset was related to loud noise from a generator.

In early September Maalah saw a different provider at the Trident clinic. That provider noted possible blood behind Maalah's left ear drum and recommended that he be seen in Anchorage, in part because the ear infection was not responding to treatment. The clinician thought there was a "remote possibility" that the blood was "a result of [b]arotrauma to the ear," which he implied might be related to noise exposure.[1]

Maalah returned to his home in Washington later that month and consulted with Dr. Paul Bikhazi, who diagnosed an outer ear infection and prescribed an antibiotic. Dr. Bikhazi's office did an audiology assessment that showed significant hearing loss in both ears as well as problems with the left ear canal or ear drum. Dr. Bikhazi wrote Maalah a two week work release. Dr. Bikhazi later prescribed more eardrops and placed "otowicks"[2] in Maalah's ears.

Maalah filed a report of injury on September 11. Trident controverted disability benefits in late September because "medical documentation [did] not support disability from working due to a work-related injury or illness." Maalah then filed a written workers' compensation claim, initially seeking only permanent partial impairment (PPI) and a finding of unfair or frivolous controversion. Maalah filed a

---

[1]     Barotrauma can refer to an injury "caused by imbalance in pressure between ambient air and the air in the middle ear." *Barotrauma*, STEDMAN'S MEDICAL DICTIONARY (28th ed. 2005).

[2]     An otowick is used to treat outer ear infections when the ear canal is swollen; the wick is inserted into the ear canal and delivers topical medicine. Ariel A. Waitzman, *What is the role of an ear wick in the treatment of otitis externa (OE)?*, MEDSCAPE (Mar. 9, 2020), https://www.medscape.com/answers/994550-8162/what-is-the-role-of-an-ear-wick-in-the-treatment-of-otitis-externa-oe.

second claim in March 2016 seeking temporary total disability (TTD) and permanent total disability (PTD). He orally amended his claim in February 2018 to include medical costs. Trident denied any liability for benefits, contending that Maalah's ear problems were not related to his employment with Trident.

Trident arranged an employer's medical evaluation (EME) with Dr. Jackson Holland in January 2017. Dr. Holland reviewed medical records, examined Maalah, and tested Maalah's hearing. Dr. Holland observed that Maalah continued to have an outer ear infection and noted an abnormality or growth in Maalah's left ear canal. Dr. Holland recommended that Maalah be treated at a specialty clinic because of the lack of progress in treating the outer ear infection. Dr. Holland thought that the ear infection was related to work for Trident and that work conditions, including Akutan's remote location, were the substantial cause of the infection. He thought the hearing loss was typical of noise-induced loss but did not specifically say it was caused by working at Trident. In response to questions from Trident's attorney the following month, Dr. Holland stated he did not think Maalah's hearing loss would prevent him performing the work in the job description Trident provided.

After receiving Dr. Holland's report, Trident withdrew its controversion of medical care. Maalah received medical treatment for his outer ear infection, but Trident continued to contest his disability status.

In December 2017 Trident arranged for Maalah to see Dr. James Rockwell. Dr. Rockwell saw no evidence of a continuing outer ear infection. He thought Maalah's hearing loss likely was work related, basing that opinion on the work history Maalah provided. Trident then sent some of Maalah's employment records to Dr. Rockwell, prompting him to revise his opinion about causation. In January 2018 Dr. Rockwell said that, based on the records Trident supplied, he did not think Maalah would have been exposed to noise at work for enough time to cause hearing loss. Dr. Rockwell was

unable to say what else could have caused the hearing loss and remained "suspicious that [Maalah's] hearing loss [was] due to injurious long-term noise exposure issues." After Dr. Rockwell's revised opinion, Trident controverted all benefits related to hearing loss. In April Dr. Bikhazi indicated in response to a letter from Trident that he concurred with Dr. Rockwell's report.

The Board held a hearing on Maalah's claims in July. The panel consisted of only two members, a Board hearing officer and one member.[3] Relevant to this appeal, Maalah testified that he was unable to work because he had fever, pain, and swelling related to the outer ear infection, and the panel member questioned Trident about the employment records it had provided Dr. Rockwell.

In August the Board sua sponte reopened the record and asked Trident whether the employment records it had submitted as a hearing exhibit were complete. The Board ordered Trident to file any previously undisclosed records and also ordered Maalah to file "any records of his employment with Trident Seafoods that differ[ed]" from Trident's hearing exhibit. The Board asked the parties to provide briefing about whether the employment records Trident provided Dr. Rockwell had complete information.

Trident objected and sought to vacate the order, arguing that the Board had "no right" to request additional documents and complaining that Maalah had not conducted discovery before the hearing. Trident claimed the Board's order violated Trident's due process rights.

A few days later the Board notified the parties that the two panel members were unable to agree, and the Board added a third member. In the final Board decision,

---

[3]     Board panels generally have a Board hearing officer, a member from labor, and a member from industry, AS 23.30.005(a), but a quorum is two panel members. AS 23.30.005(f).

the Board hearing officer and one member agreed that Maalah's claim should be denied; the other member wrote a lengthy dissent related to the hearing loss and concerns about the employment records.

The Board considered both the ear infection and hearing loss when it analyzed Maalah's requests for benefits. The Board noted that Maalah was not able to work during periods when his doctors had released him from work for medical care related to his outer ear infection. The Board decided that: (1) Maalah attached the presumption that his ear infection was temporarily disabling through his hearing testimony and Dr. Holland's opinion about the infection being work related, and (2) Trident rebutted the presumption with Dr. Holland's opinion that the pain was not disabling. Although noting that Maalah was "unable to work during the periods of work releases" for medical care, the Board denied further TTD because of scant evidence that the ear infection otherwise was disabling. Deciding that Maalah had not produced sufficient evidence to attach the presumption that he was disabled by his hearing loss, the Board denied any related TTD. Deciding that Maalah was not disabled by either the ear infection or hearing loss, the Board denied PTD.

The Board decided that Maalah attached the presumption for PPI with both Dr. Holland's opinion and Dr. Rockwell's initial opinion and that Trident rebutted the presumption with Dr. Rockwell's later opinion. Deciding that Dr. Rockwell's second opinion was entitled to more weight, the Board denied PPI.

Because Trident had paid for Maalah's past medical care related to the outer ear infection, the Board considered only medical costs for further care. The Board decided that Maalah attached the presumption of entitlement to further medical care for the outer ear infection with Dr. Holland's report, that Trident rebutted it with Dr. Rockwell's later opinion, and that Dr. Rockwell's opinion was entitled to more

weight. The Board therefore decided Maalah was not entitled to further medical care for the outer ear infection.

The Board decided that the presumption for further medical care related to the hearing loss had attached with Dr. Holland's opinion and that Trident had rebutted it with Dr. Rockwell's later opinion. Because Dr. Rockwell was "the only physician to reach a conclusion on whether the work was the substantial cause of the hearing loss," the Board said the accuracy of the employment records Trident provided him for review was a crucial factor. Noting that Trident and its attorney had a duty of candor toward the tribunal and that Maalah's testimony about his employment history conflicted with the employment records, the Board decided that Maalah was "fairly credible" but that on that point he was not credible. The Board decided that Maalah had not proved compensability for his hearing loss.

One member dissented. She noted that Dr. Rockwell considered Maalah's employment with Trident to be "seasonal" and "sporadic." But based on her analysis of the employment documents Trident provided, she concluded the records showed much more than sporadic employment because the total hours worked were far in excess of full-time hours. She further noted a discrepancy between the employment records Trident provided and the hearing-test records. Trident's employment records suggested that in 2011 Maalah had not worked for Trident, but the hearing test records indicated that in 2011 Trident had administered two hearing tests to Maalah. Trident's assertion that it gave Dr. Rockwell and the Board the same information did not adequately address the dissenting member's concerns about the records' accuracy or completeness. Because the employment records caused Dr. Rockwell to change his mind, the dissent considered their accuracy critical to the questions before the Board.

Maalah appealed to the Commission. The Commission reversed the Board's decision in part and remanded the case to the Board. The Commission

concluded that Trident did not rebut the presumption of compensability for the ear infection and hearing loss with Dr. Rockwell's opinion because Dr. Rockwell was unable to identify any reason for Maalah's hearing loss other than work and remained suspicious that the loss was caused by long-term noise exposure. In the Commission's view, this opinion was inadequate under *Huit v. Ashwater Burns, Inc.*[4] because the opinion essentially pointed to an unknown cause. The Commission considered Trident's response to the Board's sua sponte order seeking more records and information "disconcerting" and cited AS 23.30.135 for the Board's authority to investigate claims. Based on the determination that Trident did not rebut the presumption with Dr. Rockwell's report, the Commission reversed the Board's decisions about medical care and PPI. The Commission affirmed the decisions about disability, however, because of the paucity of evidence supporting those claims.

Trident asked the Commission to reconsider whether Trident had an ongoing obligation to provide medical care for the outer ear infection. Trident pointed out that Dr. Rockwell indicated Maalah no longer showed signs of an ear infection at the December 2017 exam, suggesting that any current or future outer ear infections would not be work related. The Commission agreed that Trident had rebutted the presumption related to ongoing medical care for the outer ear infection and modified its decision accordingly. It ordered the Board to decide on remand if work was the substantial cause of a chronic outer ear infection.

---

[4]     372 P.3d 904, 919-20 (Alaska 2016) (holding that medical opinions neither eliminating possibility infection was work related nor offering another explanation for infection did not rebut presumption of compensability).

Maalah appealed to us, and the parties briefed the matter as if it were an appeal of right.[5]

## III. DISCUSSION

### A. We Treat This Putative Appeal As A Granted Petition For Review.

As Trident points out, the Commission's decision is not a final decision for purposes of appeal under *Huit v. Ashwater Burns, Inc.*[6] because the Commission remanded the case to the Board for further proceedings. We previously have treated an improperly filed appeal as a petition for review and decided the issues presented when the remanded issues were discrete and deciding the issues on appeal would materially advance the ultimate end of the litigation.[7] Trident indicates that it has accepted the compensability of the hearing loss and paid PPI in accordance with Dr. Rockwell's rating. The issues decided adversely to Maalah in the Commission appeal were eligibility for PTD and TTD, which are related to Maalah's ability to earn wages rather than his medical condition alone, and they can be decided on appeal with the purpose of advancing the litigation's end. We therefore treat the putative appeal as a petition for review and grant review.[8]

---

[5]    Alaska R. App. P. 202(a) ("An appeal may be taken to the supreme court . . . from a final decision entered by the Alaska Workers' Compensation Appeals Commission . . . .").

[6]    372 P.3d at 912-16.

[7]    *Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1253-54 (Alaska 2007).

[8]    We review the Commission's decision and not the Board's. *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014). We independently review a Commission decision that substantial evidence supports the Board's findings of fact by independently reviewing the record and the Board's findings. *Id.*

**B.** **The Commission Correctly Decided Maalah Was Not Entitled To Ongoing TTD.**

Maalah sought an unspecified period of TTD in his written claim, and in his brief he asserts he "lost workdays for . . . years" because of pain and discomfort in his ears. Trident contends Maalah was not disabled from work by his ear infection except for a period of time when he was taken off work by his treating physician.

A worker is eligible for TTD for "disability total in character but temporary in quality" until the worker reaches medical stability.[9] Disability under the Act is "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."[10] We have stated with regard to disability that "[t]he primary consideration is not the degree of the worker's physical impairment, but rather the loss of earning capacity related to that impairment."[11]

The Board observed that Maalah's treating healthcare providers released him from work for a few periods of time related to his outer ear infection and said he was "unable to work during the periods of the work releases." When the Board weighed the evidence and analyzed the case, it denied TTD for the ear infection other than for the time periods Maalah was released from work. The Board cited Dr. Holland's opinions to support its decision. The Board denied TTD related to the hearing loss because Dr. Rockwell said the loss was not disabling and "Dr. Bikhazi agreed with that opinion." The Commission decided that substantial evidence supported the Board's findings.

---

[9]    AS 23.30.185.

[10]    AS 23.30.395(16).

[11]    *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590, 594 (Alaska 1979), *superseded in part on other grounds by statute as recognized in Morrison v. Alaska Interstate Constr. Inc.*, 440 P.3d 224, 235-36 (Alaska 2019); *see also Vetter v. Alaska Workmen's Comp. Bd.*, 524 P.2d 264, 266 (Alaska 1974).

Dr. Holland said that pain associated with chronic ear infections is "virtually never disabling" and that Maalah's hearing loss would not prevent him from performing his work at Trident. Dr. Rockwell said in December 2017 that Maalah's work-related conditions were medically stable, ending any entitlement to TTD. No healthcare provider said Maalah was disabled from his work at Trident except for time periods related to treatment, and one signed a note allowing Maalah to return to work in June 2017. A healthcare provider excused Maalah from work for three days in July 2017 but said he could "return to work after that time."

Because Maalah presented no evidence that the ear infection was disabling other than his own testimony that it caused him pain, the Commission correctly determined that substantial evidence supported the Board's finding that Maalah was not entitled to ongoing TTD. We note, however, that both the Board and the Commission indicated Trident paid TTD only for periods of time in 2015, even though both acknowledged Maalah had a three-day work release in July 2017 for medical care. The Board found that Maalah could not work "during the periods of work releases"; on remand a determination is needed whether Maalah should receive TTD for those three days.

We also agree with the Commission that substantial evidence in the record supports the Board's decision that Maalah was not entitled to TTD for hearing loss. Dr. Holland said Maalah's hearing loss was "not in a range or category which would exclude the gentleman from performance of occupational responsibilities as defined by Trident." Nothing in the record indicates that Maalah did not or could not perform his job in 2014 and 2015, when he had a documented hearing loss. And no healthcare provider suggested that Maalah's hearing loss was disabling. Because there is no evidence Maalah's hearing loss left him unable to earn wages comparable to those he

earned at Trident, the Commission properly affirmed the Board's denial of TTD for the hearing loss.

### C. The Commission Correctly Decided Maalah Was Not Entitled To PTD.

To be eligible for PTD, a worker must show that total disability is permanent.[12] Because Maalah was unable to show an ongoing total disability, he could not show entitlement to PTD benefits. The Commission correctly concluded that substantial evidence supported the Board's denial of PTD benefits.

### D. We Do Not Address The Parties' Other Arguments.

Both parties argue about decisions related to Maalah's employment records, and Maalah attempted to add documents to the appellate record that were not presented to the Board and the Commission. Maalah's work history with Trident is not relevant to the disability claims on appeal, and Trident has accepted the hearing loss's compensability. Any evidentiary value the records might have thus is unclear. The Board was interested in the records because of Dr. Rockwell's opinion that the hearing loss was not work related, and Trident now accepts that it is. We thus need not address these arguments.

## IV. CONCLUSION

We AFFIRM the Commission's decision that substantial evidence supported the Board's decisions about Maalah's entitlement to disability, with the exception of the three-day period in 2017. We REMAND to the Commission the question whether Maalah is entitled to TTD for that time; if the Commission cannot decide the issue, it should include this issue in its remand to the Board.

---

[12]     AS 23.30.180.